In the MATTER OF THE REFUSAL of
Dimitrius ANAGNOS:

STATE of Wisconsin, Plaintiff-Appellant,†

v.

Dimitrius ANAGNOS, Defendant-Respondent.

Court of Appeals

*No. 2010AP1812. Submitted on briefs January 24, 2011.
—Decided July 27, 2011.*

2011 WI App 118

(Also reported in 805 N.W.2d 722.)

† Petition for Review Filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Zeke S. Wiedenfeld*, assistant district attorney, and *Phillip A. Koss*, district attorney, Elkhorn.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Barry S. Cohen* of *Barry S. Cohen, S.C.*, Elkhart Lake.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. REILLY, J.[1] Dimitrius Anagnos refused to take a chemical test after his arrest for operating a motor vehicle while intoxicated (OWI). Anagnos requested a refusal hearing. At the refusal hearing, the circuit court dismissed the State's case, concluding that Anagnos's refusal to take the chemical test was lawful as the deputy did not have reasonable suspicion to stop Anagnos.

¶ 2. The State appeals and raises two issues. First, it argues that the deputy who arrested Anagnos had probable cause or reasonable suspicion to pull over Anagnos. Second, the State argues that even if the traffic stop was not justified, the circuit court could not

---

[1] This case was originally scheduled to be a one-judge opinion. On the court's own motion, it was converted to a three-judge panel by order of the Chief Judge of the Court of Appeals dated April 19, 2011. *See* WIS. STAT. RULE 809.41(3).

inquire into the lawfulness of the stop at a refusal hearing. We disagree with the State on both counts and affirm the circuit court.

## FACTS

¶ 3. In the early morning of January 31, 2010, Walworth County Deputy Sheriff Garth Frami was stopped at a red light in the right-hand turn lane of a highway intersection when he noticed Anagnos's vehicle pull out of a Taco Bell and accelerate at "rapid speed" before stopping in the left-hand turn lane of the same intersection. The Taco Bell that Anagnos pulled out of was behind the deputy and to his left. The deputy thought that Anagnos had made an illegal left-hand turn over the median when he pulled out of the Taco Bell. After Anagnos pulled up to the left-hand turn lane of the intersection, the deputy observed Anagnos make a left turn "at a high rate of speed" and without using a turn signal. Based on this observation, the deputy pulled over Anagnos. Anagnos was subsequently arrested for OWI.

¶ 4. The deputy read Anagnos the informing the accused form as required by WIS. STAT. § 343.305(4) (2009–10),[2] but Anagnos refused to submit to chemical testing. The State filed a notice of intent to revoke Anagnos's operating privilege. *See* § 343.305(9)(a). Anagnos requested a hearing on the refusal charge. *See* § 343.305(9)(a)4.

¶ 5. At the outset of the refusal hearing, Anagnos's attorney asked the circuit court to focus exclusively on whether the deputy had reasonable suspicion to pull over Anagnos. The court initially objected

---

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

on the grounds that the issues to be determined at a refusal hearing do not include reasonable suspicion to conduct a traffic stop. *See* Wis. Stat. § 343.305(9)(a)5. Once into the hearing, however, the court said that it would convert the refusal hearing into a motion to suppress hearing if the State consented. The State initially objected on the grounds that there was nothing to suppress, but eventually consented to a motion to suppress hearing after Anagnos stipulated that the deputy complied with § 343.305(4) and that Anagnos refused the test.

¶ 6. After the evidentiary hearing, the circuit court found that, as there was no oncoming or following traffic or any pedestrians present when Anagnos turned left without using his signal, he did not violate Wis. Stat. § 346.34(1)(b), which states that a driver must use a turn signal "[i]n the event that any other traffic *may be affected*." (Emphasis added.) The circuit court also concluded that Anagnos did not make an illegal left turn over a median, and that there was no evidence of speeding. The circuit court concluded that the deputy did not have reasonable suspicion to pull over Anagnos, and thus had no probable cause to arrest Anagnos for OWI. The circuit court suppressed all evidence obtained as a result of the stop, and found that Anagnos's refusal to submit to a chemical test was reasonable. The State appeals.

## STANDARD OF REVIEW

¶ 7. Whether there is probable cause or reasonable suspicion to conduct a traffic stop is a question of constitutional fact. *State v. Popke*, 2009 WI 37, ¶ 10, 317 Wis. 2d 118, 765 N.W.2d 569. We apply a two-step

standard of review. *State v. Powers*, 2004 WI App 143, ¶ 6, 275 Wis. 2d 456, 685 N.W.2d 869. First, we review the circuit court's findings of historical fact and uphold them unless they are clearly erroneous. *Id.* Second, we apply de novo review to whether the deputy had reasonable suspicion or probable cause. *Id.*; *State v. Mitchell*, 167 Wis. 2d 672, 684, 482 N.W.2d 364 (1992). A police officer may conduct a traffic stop when he or she has probable cause to believe that a traffic violation has occurred. *Popke*, 317 Wis. 2d 118, ¶ 13. Probable cause exists when there is a "quantum of evidence" that would lead a reasonable police officer to conclude that a traffic violation occurred. *Id.*, ¶ 14. Even if no probable cause exists, a police officer may still conduct a traffic stop when, under the totality of the circumstances, he or she has reasonable suspicion that a crime or traffic violation has been or will be committed. *Id.*, ¶ 23.

¶ 8. Whether the circuit court was authorized to inquire into the legality of the stop at a refusal hearing requires us to interpret WIS. STAT. § 343.305(9)(a)5. The interpretation of a statute is a question of law that we review de novo. *See WIREdata, Inc. v. Village of Sussex*, 2008 WI 69, ¶ 45, 310 Wis. 2d 397, 751 N.W.2d 736.

## DISCUSSION

*The Deputy Had Neither Probable Cause nor Reasonable Suspicion to Stop Anagnos*

■
¶ 9. WISCONSIN STAT. § 346.34(1)(b) states that a driver must use a turn signal "[i]n the event that any other traffic may be affected." The circuit court found that Anagnos did not violate this statute when he made a left turn without using his signal, as there was no

oncoming or following traffic or pedestrians present when he turned. The State counters that the sheer presence of the deputy in the far right-hand turn lane at the time Anagnos turned left is enough evidence that traffic was affected. We disagree. Evidence in the record must support a finding that Anagnos's failure to use a turn signal affected other traffic. *See City of Milwaukee v. Johnston*, 21 Wis. 2d 411, 413, 124 N.W.2d 690 (1963). Given that the deputy was in the far right-hand turn lane, we cannot see how he was affected by Anagnos's failure to use a turn signal in the left lane. Furthermore, there is nothing in the record to indicate that there were any other vehicles on the highway that could have been affected by Anagnos's left turn. We affirm the circuit court's decision that Anagnos did not violate § 346.34(1)(b), and therefore hold that the deputy did not have probable cause to stop Anagnos for a traffic violation. *See State v. Longcore*, 226 Wis. 2d 1, 9, 594 N.W.2d 412 (Ct. App. 1999) (holding that there is no probable cause when an officer makes a stop based on a mistake of law), *aff'd by an equally divided court,* 2000 WI 23, 233 Wis. 2d 278, 607 N.W.2d 620.

¶ 10. The State also argues that, regardless of whether Anagnos violated Wis. Stat. § 346.34(1)(b), the deputy had reasonable suspicion to conduct a *Terry* stop.[3] A *Terry* stop requires that a law enforcement officer must reasonably conclude, in light of his or her experience, that criminal activity has taken place or is taking place. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *State v. Richardson*, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990). The officer must be able to point to specific and articulable facts that, taken together with rational

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

inference from those facts, objectively warrant a reasonable person with the knowledge and experience of the officer to believe that criminal activity is afoot at the time of the stop. *State v. Rutzinski*, 2001 WI 22, ¶ 14, 241 Wis. 2d 729, 623 N.W.2d 516. Wisconsin law recognizes that a law enforcement officer may make an investigatory stop based solely on observations of lawful conduct, although such a seizure must be premised on reasonable inferences drawn from the lawful conduct that establish criminal activity is afoot. *State v. Waldner*, 206 Wis. 2d 51, 57, 556 N.W.2d 681 (1996). The determination of reasonableness is a commonsense test based on the totality of the facts and circumstances known to the officer at the time of the stop. *Richardson*, 156 Wis. 2d at 139–40.

¶ 11. The State argues that the standard for a *Terry* stop was met based on the totality of circumstances: the deputy first observed Anagnos make an apparently illegal turn over a median, "accelerate at a high rate of speed" up to the stop light, and then make a left turn at a highway intersection without using a turn signal. We first address whether Anagnos made an illegal left turn over a median when he pulled out of Taco Bell. WISCONSIN STAT. § 346.15 governs driving on a divided highway. In relevant part, the statute provides that a driver "making a left turn to or from a private driveway . . . may drive across a paved dividing space or a physical barrier not constructed to impede crossing by vehicular traffic, unless the crossing is prohibited by signs." *Id.* The deputy testified that the median that Anagnos drove over was four to five inches high and was not meant to be driven over. The circuit court found that the deputy was wrong on both counts. First, Anagnos measured the height of the median and determined that it was one-and-one-half to two inches high.

65

The State did not rebut this testimony and conceded that the deputy was incorrect. Furthermore, the circuit court found that there were no signs prohibiting turns over the median. Therefore, the circuit court found that the turn was legal. As the State has not challenged the circuit court's factual conclusions, we affirm the circuit court's determination that Anagnos did not illegally turn over a median. *See* Wis. Stat. § 805.17(2) ("Findings of fact shall not be set aside unless clearly erroneous . . . .").

¶ 12. The deputy testified that after Anagnos turned over the median he drove "at a rapid speed" to the intersection and then, once the light turned green, made his left turn without a signal "at rapid acceleration." The circuit court, however, found that there was no evidence that Anagnos was speeding.

¶ 13. We have already stated that Anagnos's failure to use his turn signal was not unlawful. Anagnos, therefore, broke no traffic laws: his turn over the median was legal, he did not speed, and his left turn without using his turn signal did not affect other traffic. The circuit court noted that there was no testimony that the deputy suspected Anagnos of driving under the influence, or even why the deputy stopped Anagnos. We conclude that based on the totality of the circumstances, there were no specific and articulable facts to justify a *Terry* stop. The circuit court properly suppressed all the evidence obtained as a result of the stop.

*The Circuit Court Appropriately Considered the Lawfulness of the Stop at the Refusal Hearing*

¶ 14. When a circuit court holds a hearing on a defendant's refusal to take a chemical test, the court is

limited to considering: (1) "Whether the officer had probable cause to believe the [defendant] was driving or operating a motor vehicle while under the influence of alcohol . . . and whether the [defendant] was lawfully placed under arrest for [OWI];" (2) whether the officer read the proper information to the defendant; and (3) whether the defendant refused to take the test. WIS. STAT. § 343.305(9)(a)5. The State argues that it was improper at the refusal hearing for the circuit court to consider whether the deputy had reasonable suspicion to stop Anagnos.[4] We disagree.

¶ 15. The refusal hearing statute states that a circuit court may consider "whether the [defendant] was lawfully placed under arrest." WIS. STAT. § 343.305(9)(a)5.a. It was therefore proper for the circuit court to inquire into whether the deputy had reasonable suspicion to stop Anagnos. Without reasonable suspicion or probable cause to pull over Anagnos, the deputy had no authority to require Anagnos to submit to a chemical test. *See Longcore*, 226 Wis. 2d at 6 (evidence obtained as the result of an illegal traffic stop is inadmissible).

¶ 16. The State argues that the Wisconsin Supreme Court's holding in *State v. Nordness*, 128 Wis. 2d 15, 381 N.W.2d 300 (1986), dictates that a circuit court may not consider the lawfulness of a traffic stop at a refusal hearing. Specifically, the State contends that *Nordness* held that at a refusal hearing a circuit court may inquire into whether there was probable cause for

---

[4] The State consented to the circuit court hearing Anagnos's motion to suppress at the refusal hearing. The State did not, however, stipulate that reasonable suspicion is an issue to be considered at a refusal hearing. We therefore hold that the State did not waive its right to appeal the circuit court's decision to determine the lawfulness of the stop at the refusal hearing.

an officer to arrest a defendant for OWI, but that the circuit court may not determine whether there was reasonable suspicion to make the traffic stop in the first instance.

¶ 17. In *Nordness*, the state patrol officer testified that he saw a vehicle weaving in the roadway and recognized the driver as Nordness, whom the officer had seen on three or four prior occasions. *Id.* at 21. As the driver turned in front of the officer's vehicle, he came about five feet away from the officer. *Id.* Once again, the officer recognized Nordness as the driver. *Id.* The officer then turned on his siren and pursued Nordness for about three-tenths of a mile before Nordness turned into a driveway. *Id.* According to the officer, Nordness subsequently got out of his car and began running towards his house. *Id.* The officer—who had his highbeam headlights on and pointed his vehicle's spotlight at the driver—testified that the driver was alone in his vehicle and that the officer yet again recognized the driver as Nordness. *Id.* Later, a woman who lived with Nordness and whom the officer also recognized, came out of the house and claimed to be the driver of the car. *Id.* at 22. When Nordness came out of the house, the officer noticed that Nordness was having trouble with his balance and was slurring his speech. *Id.* After Nordness failed a field sobriety test, he was placed under arrest for OWI. *Id.* Nordness refused to take the chemical test. *Id.*

¶ 18. At the refusal hearing, Nordness and the woman both testified that the woman was driving the car. *Id.* at 22–23. The circuit court dismissed the refusal charge on the grounds that the State had not proven "to a reasonable certainty" that Nordness was driving the car. *Id.* at 23. The court of appeals reversed, and the supreme court affirmed. *Id.* at 23–24. The supreme

court held that because the refusal hearing statute made no mention of the circuit court determining the threshold question of whether the defendant was actually driving the car, the circuit court was not allowed to consider that issue at the refusal hearing. *Id.* at 26–27. The court stated that "[o]nly the determination of probable cause is an issue to be addressed in a [refusal] hearing; the determination of whether a defendant was the actual driver is not an issue [at a refusal hearing], nor is it material to the inquiry of whether probable cause existed." *Id.* at 29. As the court noted, it was not necessary to find that Nordness was the actual driver in order to find that the police officer had probable cause to believe that Nordness was operating a motor vehicle while intoxicated. *Id.* at 28–29.

¶ 19. *Nordness* is distinguishable from this case. In *Nordness*, the officer had reasonable suspicion to pull over the vehicle because the officer observed the vehicle weaving in the roadway. Once the vehicle pulled into a driveway, the officer was confronted with a woman who claimed to be driving the vehicle, but whose story was not consistent with the officer's observations. When the officer asked her to get Nordness, the officer recognized Nordness as the driver of the vehicle and also noted that he appeared drunk. Based on these facts, the officer lawfully placed Nordness under arrest.

¶ 20. In Anagnos's case, the deputy did not have probable cause that Anagnos committed a traffic violation, nor reasonable suspicion that Anagnos was drinking and driving. The deputy's stop of Anagnos was therefore unlawful. Without a legal stop, Anagnos could not lawfully be placed under arrest for OWI. In *Nordness*, the officer had both reasonable suspicion to conduct a traffic stop, and probable cause to arrest Nordness. The arrest of Nordness was legal, regardless

of whether he was actually driving the vehicle. *Nordness* does not, therefore, prevent a circuit court from determining the lawfulness of a traffic stop at a refusal hearing. We conclude that whether there was reasonable suspicion or probable cause to make the stop, quite apart from whether there was probable cause to arrest for OWI after the stop was made, is a proper subject at a refusal hearing.

## CONCLUSION

¶ 21. We hold that the deputy did not have probable cause or reasonable suspicion to conduct a traffic stop, and thus Anagnos was not lawfully placed under arrest for OWI. As WIS. STAT. § 343.305(9)(a)5.a. states that a circuit court conducting a refusal hearing may consider "whether the [defendant] was lawfully placed under arrest," the circuit court appropriately inquired into whether the deputy lawfully stopped Anagnos. The order of the circuit court suppressing the evidence against Anagnos is affirmed.

*By the Court.*—Order affirmed.