In the MATTER OF THE REFUSAL OF
Dimitrius ANAGNOS:

STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Dimitrius ANAGNOS, Defendant-Respondent.

Supreme Court

*No. 2010AP1812. Oral argument April 24, 2012.
—Decided June 26, 2012.*

2012 WI 64

(Also reported in 815 N.W.2d 675.)

577

For the plaintiff-appellant-petitioner, there were briefs by *Phillip A. Koss,* district attorney for Walworth county, *Zeke S. Wiedenfeld,* assistant district attorney for Walworth county, Elkhorn and the cause was argued by *Michael C. Sanders,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-respondent there were briefs and oral argument by *Barry S. Cohen* and *Barry S. Cohen, S.C.,* Elkhart Lake.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, State of Wisconsin, seeks review of a published court of appeals decision that affirmed the circuit court. The order of the circuit court determined that the traffic stop of Dimitrius Anagnos's vehicle was unconstitutional and that his operating privileges should not have been revoked on account of his refusal to take a chemical test to determine the presence or quantity of alcohol in his blood or breath.[1]

---

[1] *See State v. Anagnos,* 2011 WI App 118, 337 Wis. 2d 57, 805 N.W.2d 722 (affirming an order of the circuit court for Walworth County, Robert J. Kennedy, Judge).

¶ 2. In this case, an officer conducted a traffic stop of Anagnos's vehicle. Once the vehicle was stopped and the officer spoke with Anagnos, he determined that Anagnos was intoxicated and arrested him for operating while under the influence of an intoxicant (OWI). It is undisputed that after the officer stopped the vehicle and spoke with Anagnos, the officer had probable cause to believe that Anagnos was operating while under the influence of an intoxicant. The parties' arguments center on an earlier point in time, that is, the officer's initial decision to conduct the traffic stop.

¶ 3. The State argues that the circuit court erred when it refused to revoke Anagnos's operating privileges. Citing Wis. Stat. § 343.305(9)(a)5.a., it contends that during a refusal hearing, a defendant cannot contest the constitutionality of the officer's initial decision to conduct a traffic stop. Rather, it asserts, the statute limits the defendant to contesting whether there was probable cause to believe that he was operating under the influence of an intoxicant based on all the information the officer had gathered during a traffic stop and up until the moment of the arrest.[2] In the alternative, the State argues that the traffic stop in this case was constitutional because it was based on probable cause or reasonable suspicion.

¶ 4. We conclude that Wis. Stat. § 343.305(9)(a)5.a. does not limit the defendant to contesting whether the

---

[2] Here, Anagnos was arrested for operating while under the influence of alcohol. If the defendant was arrested for operating with a detectable amount of restricted controlled substance in his or her blood (OCS) or for having a prohibited alcohol concentration (PAC), Wis. Stat. § 343.305(9)(a)5.a. would permit the defendant to challenge whether the officer had probable cause to believe the person was operating a motor vehicle under those conditions.

officer had probable cause to believe the defendant was operating while under the influence of an intoxicant. The language of the statute provides that a defendant may also contest whether he was lawfully placed under arrest. As part of this inquiry, the circuit court may entertain an argument that the arrest was unlawful because the traffic stop that preceded it was not justified by either probable cause or reasonable suspicion.

¶ 5. When we consider the totality of the facts and circumstances in this case, we conclude that the arresting officer pointed to specific and articulable facts, which taken together with rational inferences from those facts, give rise to the reasonable suspicion necessary for an investigative stop. Because the stop of Anagnos's vehicle was supported by reasonable suspicion, the circuit court erred in concluding that the stop was unconstitutional and that Anagnos was not lawfully placed under arrest. Under these circumstances, we reverse the court of appeals and remand to the circuit court to revoke Anagnos's operating privilege under Wis. Stat. § 343.305(9)(d).

I

¶ 6. The events leading up to Anagnos's refusal to take a chemical test occurred at approximately 1:15 a.m. on January 31, 2010. At that time, Deputy Frami was on patrol in Lake Geneva when he observed a vehicle pull out of a parking lot and make a left turn by crossing a highway divided by an elevated median. He observed the vehicle accelerate rapidly to a stoplight, execute a second left turn without signaling, and again accelerate rapidly. Based on these observations, Deputy Frami stopped the vehicle.

¶ 7. Once Deputy Frami approached the vehicle, he determined that its driver, Anagnos, was intoxicated. He read Anagnos the Informing the Accused form as required by Wis. Stat. § 343.305(4)(2009–10)[3] and asked Anagnos to consent to chemical testing. Anagnos refused. Pursuant to Wis. Stat. § 343.305(9)(a), Deputy Frami promptly filed a notice of intent to revoke Anagnos's operating privileges.

¶ 8. Anagnos retained counsel and requested a hearing on the revocation notice. During the hearing, defense counsel stipulated that once Deputy Frami stopped the vehicle and observed Anagnos, he had probable cause to believe Anagnos was driving while under the influence of alcohol. Defense counsel also stipulated that Deputy Frami properly read the Informing the Accused form to Anagnos, and that Anagnos refused to take the chemical test. The only issue challenged by defense counsel was the constitutionality of the stop.

¶ 9. The State and the defense disagreed about whether the relevant statutes permitted Anagnos to defend against revocation by contesting the constitutionality of the traffic stop. The circuit court agreed that the permissible scope of a refusal hearing was "an interesting legal question," but it decided to take evidence about the constitutionality of the stop prior to ruling on that question.

¶ 10. Deputy Frami testified that he was stopped at a red light at approximately 1:15 in the morning

---

[3] Wisconsin Stat. § 343.305(4) requires law enforcement officers, at the time of a request for a chemical test specimen, to inform the person that, among other things, refusal to take the test will result in revocation of operating privileges.

All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

when he witnessed Anagnos's vehicle pulling out of a Taco Bell parking lot and turning left onto Highway 120. That highway is divided by an elevated median, and Deputy Frami testified that Anagnos drove over the median in the course of turning left.

¶ 11. Deputy Frami described the elevated median as "a concrete curb with . . . concrete paved in between the two curbs dividing northbound and southbound Highway 120 lanes." He continued: "[The curb] raises maybe four or five inches, standard curb height, whatever height that would be; and then it's flat across the top with concrete until the other side of the curb where it comes back down again."

¶ 12. Deputy Frami testified that he was "familiar with other . . . concrete dividers for highways," including "dividers that are designed to permit an individual to cross over them." He explained: "They're usually gradually sloped, either convex or concaved angles and usually are not [perpendicular] to the roadway."

¶ 13. Upon questioning by the circuit court, Deputy Frami agreed that the elevated median crossed by Anagnos "is not the usual type of barrier you're expected to be able to cross. You're not supposed to cross that barrier to turn in any direction normally."

¶ 14. Deputy Frami testified that after executing the turn, Anagnos "rapidly accelerated" up to the nearest stoplight. When the stoplight turned green, Deputy Frami observed Anagnos turn left onto Highway 50 without activating his turn signal and again "[take] off at a rapid acceleration." On cross-examination, Deputy Frami acknowledged that there were not any vehicles in addition to the ones driven by Anagnos and Deputy Frami in the vicinity, and that he could not confirm that Anagnos exceeded the speed limit at any time.

¶ 15. The circuit court also heard testimony from Anagnos, who testified that he did not exceed the speed limit at any time and that he knew he had activated his turn signal because "I always put on a turn signal." He also testified that, based on his own measurements, the height of the median he crossed was not four to five inches, but rather, was only one-and-a-half to two inches. After further investigation, the State later conceded that the elevated median was not four or five inches high as Deputy Frami estimated, but rather was two inches high and five feet, eight inches wide.

¶ 16. Based on the evidence adduced at the hearing, the circuit court determined that Deputy Frami did not have probable cause to stop Anagnos because he did not observe Anagnos violate any law prior to the traffic stop. The court asserted that Anagnos did not violate Wis. Stat. § 346.15 when he crossed the elevated median because the curb was only two inches high, rather than four to five inches as Deputy Frami had estimated.[4] It further determined that there was no evidence that Anagnos exceeded the speed limit, and that Anagnos was not required to activate his turn signal prior to turning onto Highway 50 because the movement did not affect other traffic. Wis. Stat. § 346.34(1)(b).

---

[4] Wisconsin Stat. § 346.15 provides:

Whenever any highway has been divided into 2 roadways by an intervening unpaved or otherwise clearly indicated dividing space or by a physical barrier constructed to substantially impede crossing by vehicular traffic, the operator of a vehicle shall drive only to the right of the space or barrier and no operator of a vehicle shall drive over, across, or within the space or barrier except through an opening or at a crossover or intersection . . . , except that an operator of a vehicle when making a left turn to or from a private driveway . . . may drive across a paved dividing space or physical barrier not constructed to impede crossing by vehicular traffic, unless the crossing is prohibited by signs . . . .

¶ 17. The circuit court pointed to the "mistakes [made] by the officer," specifically Deputy Frami's belief that the two left turns were illegal, when it concluded that the stop was not supported by reasonable suspicion. Accordingly, the court determined that the stop was unconstitutional, and it entered an order "suppressing" the evidence obtained as a result of the stop. Ultimately, the circuit court dismissed the State's case.[5]

¶ 18. The court of appeals affirmed. It concluded that the refusal hearing statute, Wis. Stat. § 343.305(9)(a)5.a., permitted the circuit court to consider the lawfulness of the traffic stop at the refusal hearing. *State v. Anagnos,* 2011 WI App 118, ¶ 15, 337 Wis. 2d 57, 805 N.W.2d 722. Like the circuit court, the court of appeals' reasonable suspicion analysis relied heavily on the premise that Anagnos broke no traffic laws. *Id.,* ¶ 13. Noting that Deputy Frami did not testify that he suspected that Anagnos was intoxicated prior to the stop, the court of appeals concluded that the stop was unconstitutional because it was not supported by probable cause or reasonable suspicion. *Id.*

II

![redacted]

¶ 19. This case presents two questions for our review. First, we must determine whether a defendant may raise the constitutionality of a traffic stop as a

---

[5] The court's order provided: "Based upon the suppression of evidence ordered above, the State is without sufficient evidence to meet its burden of proof to establish that the defendant unlawfully refused to submit to chemical testing, and therefore, the Court finds that the defendant's refusal to submit to chemical testing was REASONABLE, and the refusal charge is therefore DISMISSED."

defense at a refusal hearing. To answer this question, we are required to interpret the refusal hearing statute, Wis. Stat. § 343.305(9)(a)5. It is well established that this court interprets statutes independent of the determinations rendered by the circuit court and the court of appeals. *Megal Dev. Corp. v. Shadof,* 2005 WI 151, ¶ 8, 286 Wis. 2d 105, 705 N.W.2d 645.

¶ 20. If we determine that a defendant may defend against a refusal on the basis of the constitutionality of the stop, we must determine whether the stop of Anagnos's vehicle was constitutional. The stop was unconstitutional if it was not based on probable cause or reasonable suspicion.

¶ 21. Whether there was probable cause or reasonable suspicion to conduct a stop is a question of constitutional fact, which is a mixed question of law and fact to which we apply a two-step standard of review. *State v. Post,* 2007 WI 60, ¶ 8, 301 Wis. 2d 1, 733 N.W.2d 634. First, we review the circuit court's findings of historical fact under the clearly erroneous standard. *Id.* Second, we review the application of those historical facts to the constitutional principles independent of the determinations rendered by the circuit court and the court of appeals. *Id.*

### III

¶ 22. We begin by examining the relevant statutes. Wisconsin Statute § 343.305, known as the implied consent law, provides that any person who drives on the public highways of this state is deemed to have consented to chemical testing upon request by a law enforcement officer. Upon arrest of a person for violation of an OWI-related statute, a law enforcement officer may

request the person to provide a blood, breath, or urine sample for chemical testing.[6] Wis. Stat. § 343.305(3)(a). At the time of the request for a sample, the officer must read to the person certain information set forth in § 343.305(4), referred to as the Informing the Accused form.

¶ 23. If the person submits to chemical testing and the test reveals the presence of a detectable amount of a restricted controlled substance or a prohibited alcohol concentration, the person is subjected to an administrative suspension of his operating privileges. Wis. Stat. § 343.305(7)(a). The person has the right to an administrative hearing and to judicial review. Wis. Stat. § 343.305(8). The administrative hearing is limited to certain issues that are set forth by statute. Wis. Stat. § 343.305(8)(b)2.

¶ 24. If, on the other hand, the person refuses to submit to chemical testing, he is informed of the State's intent to immediately revoke his operating privileges. Wis. Stat. § 343.305(9)(a). The person is also informed that he may request a refusal hearing in court. Wis. Stat. § 343.305(9)(a)4.

---

[6] Wisconsin Stat. § 343.305(3)(a) enumerates a series of specific offenses, including Wis. Stat. §§ 346.63(1), 346.63(2), 346.63(2m), 346.63(5), 346.63(6), 940.09, and 940.25. For ease of reading, we collectively refer to these statutes as "OWI-related statutes" throughout the opinion.

As discussed above, Wis. Stat. § 343.305(3)(a) is implicated when a person is arrested for violation of an OWI-related statute. There are parallel provisions set forth in Wis. Stat. § 343.305(3)(am) (addressing persons driving or operating or on duty time with respect to a commercial motor vehicle) and Wis. Stat. § 343.305(3)(ar) (addressing persons involved in accidents that cause substantial bodily harm).

¶ 25. The issues that a defendant may raise at a refusal hearing are limited by statute to those set forth in Wis. Stat. § 343.305(9)(a)5. Wis. Stat. § 343.305(9)(c); *see also State v. Nordness*, 128 Wis. 2d 15, 381 N.W.2d 300 (1986); *Washburn County v. Smith*, 2008 WI 23, 308 Wis. 2d 65, 746 N.W.2d 243; *State v. Gautschi*, 2000 WI App 274, 240 Wis. 2d 83, 622 N.W.2d 24. If all of the issues under sub. (9)(a)5. are determined adversely to the person, the court shall revoke the person's operating privileges. Wis. Stat. § 343.305(9)(d). However, "[i]f one or more of the issues is determined favorably to the person, the court shall order that no action be taken on the operating privilege on account of the person's refusal to take the test in question." Wis. Stat. § 343.305(9)(d).[7]

¶ 26. The State argues that by virtue of sub. (9)(a)5.a., a defendant cannot contest the constitutionality of the officer's initial decision to conduct a traffic

---

[7] During the proceedings in the circuit court, the parties and the court seemed to believe that the refusal hearing had been converted into a suppression hearing. The State asserts that it is not proper for the court to suppress evidence at a refusal hearing because it is an administrative proceeding, and the rules of criminal procedure do not apply.

The discussion of "suppression" and the exclusionary rule is somewhat beside the point. The question is not whether evidence of Anagnos's intoxication and refusal should be suppressed under the exclusionary rule as fruit of the poisonous tree. Instead, the statute directs that the question in this case is whether the person was "lawfully placed under arrest." If the answer to this question is "no," the statute directs the court to "order that no action be taken" against the person. Wis. Stat. § 343.305(9)(d).

The parties did not make any arguments about what preclusive effect, if any, a determination in a refusal hearing that the person was not lawfully placed under arrest would have in a subsequent prosecution for OWI. Accordingly, we do not address that question. *See* the concurrence, which further discusses this issue.

stop. Rather, it asserts, Anagnos is limited to contesting whether there was probable cause to believe that he was operating while under the influence of an intoxicant based on all the information the officer had gathered during a traffic stop and up until the moment of the arrest.

¶ 27. To evaluate the State's argument, we again turn to examine the statutory text. Wisconsin Statute § 343.305(9)(a)5. provides that the issues a defendant may contest at a refusal hearing are limited as follows:

> a. Whether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol . . . and whether the person was lawfully placed under arrest for violation of [an OWI-related statute].
>
> b. Whether the officer complied with sub. (4) [by reading the Informing the Accused form to the person].
>
> c. Whether the person refused to permit the test. The person shall not be considered to have refused the test if it is shown by a preponderance of evidence that the refusal was due to a physical inability to submit to the test . . . unrelated to the use of alcohol, controlled substances, controlled substance analogs or other drugs.

██ ██

¶ 28. When interpreting a statute, we begin with the language of that statute. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.,* ¶ 46; *see also Johnson v. State,* 76 Wis. 2d 672, 676, 251 N.W.2d 834 (1977); *Dykstra v. Arthur G. McKee & Co.,* 100 Wis. 2d 120, 127, 301 N.W.2d 201 (1981); *Wood County v. Bd. of*

*Vocational, Technical & Adult Edu.*, 60 Wis. 2d 606, 615, 211 N.W.2d 617 (1973) ("[T]his court can only attempt to construe a statute so that all parts have a function and meaning.").

¶ 29. In this case, the relevant portion of the statute is found in sub. (9)(a)5.a. That subsection permits circuit courts to consider "[w]hether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol . . . *and whether the person was lawfully placed under arrest*" for violation of an OWI-related statute. (Emphasis added).

¶ 30. According to the State, the inquiry of "whether the person was lawfully placed under arrest" for violation of an OWI-related statute is encompassed within the issue of whether the officer had probable cause to believe the person was driving under the influence of alcohol, an issue that Anagnos has conceded. To bolster this interpretation, the State relies on this court's decisions in *Nordness* and *Smith*. In each of those cases, this court focused its inquiry on "[w]hether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol" and did not discuss "whether the person was lawfully placed under arrest."

¶ 31. The interpretation advanced by the State, that the lawfulness of the arrest is encompassed within the inquiry of probable cause, is not compatible with the statutory language. It would render the statutory phrase "and whether the person was lawfully placed under arrest" mere surplusage. *See Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 32. The legislature's use of the conjunctive word "and" indicates that there are two issues set forth in sub. (9)(a)5.a., and that those two issues are indepen-

dent.[8] Not only can a defendant contest "[w]hether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol," but also, the defendant can contest "whether the person was lawfully placed under arrest" for violation of an OWI-related statute. *Gautschi*, 240 Wis. 2d 83, ¶ 6. If the legislature had intended to limit the inquiry set forth in sub. (9)(a)5.a. to "[w]hether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol," we presume that it would not have included language in the statute indicating that courts must also inquire into "whether the person was lawfully placed under arrest for violation of [an OWI-related statute]."

¶ 33. Further, neither *Nordness* nor *Smith* undermine this textually based interpretation of the statute. In both cases, this court concluded (as we do here) that the issues that can be raised at a refusal hearing are strictly limited to the issues enumerated in the refusal hearing statute.[9] *Nordness*, 128 Wis. 2d at 19. In both cases, the court zeroed in on the portion of the refusal hearing statute that was relevant to the arguments raised in the particular case: "whether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol." Neither case was presented with any question

---

[8] *See Bartholomew v. Wisconsin Patients Compensation Fund*, 2006 WI 91, ¶ 79, 293 Wis. 2d 38, 717 N.W.2d 216.

[9] At the time that the *Nordness* case was decided, the refusal hearing statute was Wis. Stat. § 343.305(3)(b)5. (1983–1984). The statute has been subsequently amended and renumbered to Wis. Stat. § 343.305(9)(a)5. For purposes of our analysis, the content of the statute is substantially the same as it was when *Nordness* was decided.

regarding the meaning of the statutory phrase "whether the person was lawfully placed under arrest for violation of [an OWI-related statute]," and the court did not address the meaning of that phrase in either case.

¶ 34. In *Nordness*, the officer saw a vehicle weaving in the roadway and identified the driver as Nordness. 128 Wis. 2d at 21. The officer illuminated his red lights and siren, but the vehicle did not stop. *Id.* The officer followed the vehicle as it accelerated and then turned into a driveway, watched as the driver got out of the car and ran to the house, shouted for the driver to stop, and observed the driver turn around and mumble something unintelligible before disappearing toward the back of the house. *Id.* at 21–22.

¶ 35. Nordness never challenged the lawfulness of the officer's decision to attempt to pull him over. Instead, Nordness argued that he was not actually the driver of the car. He argued that there was a "threshold determination to whether probable cause existed," that is, "whether the person charged with refusal to submit to chemical testing was in fact the driver of the motor vehicle." *Id.* at 24, 19.

¶ 36. The *Nordness* court "reject[ed] the argument that [the refusal hearing statute] encompasses anything more than the issues listed within that subsection," and accordingly, it likewise rejected the assertion that there was any "threshold" issue of whether Nordness was actually the driver of the car. *Id.* at 24. It concluded that the question in the statute is whether the officer had probable cause to believe that the defendant drove while intoxicated, not whether it was actually the defendant who was driving while intoxicated. *Id.* at 26–27. According to the *Nordness* court, making a factual determination about whether the defendant was "actually the driver of the car" would

592

"impermissibly broaden[] the revocation hearing's scope to consider" an issue that was not enumerated in the statute. *Id.* at 26–27.

¶ 37. In *Smith*, the defendant was pulled over after an officer observed him traveling on a two-lane highway at a rate of speed that appeared to be well above the posted speed limit. 308 Wis. 2d 65, ¶ 8. After being pulled over, Smith was arrested for operating a motor vehicle while under the influence of an intoxicant. Smith never challenged the legality of the stop. Rather, he challenged whether the officer had probable cause to arrest him for operating under the influence, given that there was no evidence that the officer conducted a field sobriety test. *Id.*, ¶ 24.

¶ 38. We acknowledge that in both *Nordness* and *Smith*, the court used shorthand to summarize the issues that are enumerated in the refusal hearing statute. We also acknowledge that, by using this shorthand, the court did not discuss the statutory language at issue here: "whether the person was lawfully placed under arrest" for violation of an OWI-related statute. Instead, the court summarized the issues set forth in the refusal hearing statute as follows: "(1) whether the officer had probable cause to believe the person was driving under the influence of alcohol; (2) whether the officer complied with the informational provisions . . . ; (3) whether the person refused to permit the test; and (4) whether the refusal to submit to the test was due to a physical inability." *Nordness*, 128 Wis. 2d at 28; *Smith*, 308 Wis. 2d 65, ¶ 2 n.3.

¶ 39. In both cases, the court attempted to simplify complicated statutory language, and in so doing, the court focused on the portion of the refusal hearing statute that was directly implicated by the arguments advanced in each case. In both cases, the relevant

portion of the statute was "[w]hether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol." The lawfulness of a traffic stop was not at issue in either case. The court's attempts to focus its inquiry on the statutory language relevant to the resolution of the cases before it should not be misunderstood as a conclusion that the phrase "whether the person was lawfully placed under arrest" for violation of an OWI-related statute is surplusage. Neither *Nordness* nor *Smith* stands for the proposition that that phrase should be read out of the statute.[10]

¶ 40. In the alternative, the State argues that if the statutory phrase "lawfully placed under arrest for violation of [an OWI-related statute]" must be given independent meaning, it means only that the person was actually arrested for an OWI offense. Again, the State's alternative interpretation omits language from the statute. The statute provides that the consideration for the circuit court was whether the person was "*lawfully* placed under arrest." If the legislature meant to limit this defense to whether the person was actually placed under arrest, not whether the person was lawfully placed under arrest, we presume that the legislature would have not used the word "lawfully" in the statute.

¶ 41. Here, Anagnos was not "lawfully placed under arrest" if he was seized during the course of an unconstitutional traffic stop. *See Welsh v. Wisconsin,* 466 U.S. 740, 745–46 (1984) (determining that a defen-

---

[10] "[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall,* 266 U.S. 507, 511 (1925); *see also MBS-Certified Public Accountants, LLC v. Wisconsin Bell Inc.,* 2012 WI 15, ¶¶ 34, 34 n.15, 338 Wis. 2d 647, 809 N.W.2d 857.

dant was not "lawfully placed under arrest" because officers violated the Fourth Amendment by seizing the defendant in his home without a warrant and without exigent circumstances). The traffic stop at issue in this case was unconstitutional if it was not based on probable cause or reasonable suspicion.[11]

¶ 42. We conclude that Wis. Stat. § 343.305(9)(a)5.a. does not limit the circuit court to considering whether, based on all the evidence gathered up until the moment of the arrest, the officer had probable cause to believe the defendant was operating while under the influence of an intoxicant. The language of the statute provides that a defendant may also contest whether he was lawfully placed under arrest. As part of this inquiry, the circuit court may entertain an argument that the arrest was unlawful because the traffic stop that preceded it was not justified by probable cause or reasonable suspicion.

¶ 43. If the court concludes that the defendant was not "lawfully placed under arrest," then it has

---

[11] The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secure in their persons. . . against unreasonable searches and seizures, shall not be violated. . . but upon probable cause . . . ." *See also* Wis. Const. Art. I, § 11.

In *Terry v. Ohio,* 392 U.S. 1, 22 (1968), the United States Supreme Court determined that in appropriate circumstances, "reasonable suspicion" could justify a brief detention "for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." We have adopted this analysis under our own constitution, *State v. Post,* 2007 WI 60, ¶ 12, 301 Wis. 2d 1, 733 N.W.2d 634, and the legislature has also codified the reasonable suspicion standard in Wis. Stat. § 968.24.

determined the issue set forth in sub. (9)(a)5.a.favorably to the defendant. Under those circumstances, Wis. Stat. § 343.305(9)(d) provides that "the court shall order that no action be taken on the operating privilege on account of the person's refusal to take the test in question."[12]

---

[12] The State also advances a public policy argument based on a comparison between Wis. Stat. § 343.305(9)(a)5.a. (which sets forth the issues that can be considered in a refusal hearing in court) and Wis. Stat. § 343.305(8)(b)2. (which sets forth the issues that can be considered in an administrative suspension hearing based on a chemical test that reveals a prohibited amount of alcohol in the driver's blood).

As explained above, the refusal statute plainly permits defendants to challenge both probable cause and whether the arrest was lawful. By contrast, on its face, the chemical testing statute appears to permit defendants to challenge probable cause only, and not the lawfulness of the arrest. *See* Wis. Stat. § 343.305(8)(b)2.e. ("If a test was requested under sub. (3)(a)," a defendant may challenge "whether probable cause existed for the arrest.") The State asserts that permitting only those drivers who refuse chemical testing to challenge the lawfulness of the arrest will have the effect of encouraging drivers to refuse chemical testing.

Our decision in this case is based on the text of the statute at issue. We make no attempt to offer an interpretation of Wis. Stat. § 343.305(8) in this opinion because the interpretation of that statute is not at issue in this case.

In any event, we generally leave questions of public policy to the legislature. *See, e.g., Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 185–86, 290 N.W.2d 276 (1980) In a case of refusal, the legislature plainly provided that a defendant can challenge the lawfulness of the arrest in a refusal hearing, and we are reticent to read those words out of the statute, as the State urges. If we are wrong about the legislative intent, we suspect that the legislature will clarify its intent by amending the relevant statutes.

IV

¶ 44. We turn to reviewing the circuit court's determination that Anagnos was not lawfully placed under arrest. The circuit court appeared to base this determination on its conclusion that Deputy Frami did not observe Anagnos violate any law prior to the stop. Most significantly, the circuit court determined that Anagnos did not violate Wis. Stat. § 346.15 when he crossed the elevated median to turn left onto the divided highway, and the State does not now argue that any of Anagnos's other actions violated the rules of the road.

¶ 45. For purposes of this opinion, we take the circuit court's conclusion about the legality of crossing the median at face value. Although the height of the elevated median was contested at the circuit court, we are not certain that a factual determination about its height is dispositive of whether the statute was violated. Under Wis. Stat. § 346.15, the determinative question appears to be whether a physical barrier was "constructed" to "impede crossing by vehicular traffic," and Deputy Frami testified that based on his experience, the elevated median crossed by Anagnos "is not the usual type of barrier you're expected to be able to cross."

¶ 46. Even so, we assume, without deciding, that the circuit court correctly determined that Deputy Frami did not have probable cause when he conducted the traffic stop because he did not observe Anagnos violate Wis. Stat. § 346.15 or any other law. Our assumption that driving over the elevated median was not unlawful, however, does not resolve the question of whether the traffic stop was supported by reasonable suspicion.

¶ 47. An investigative traffic stop may be supported by reasonable suspicion even when the officer did not observe the driver violate any law. *See Post,* 301 Wis. 2d 1, ¶ 24 ("[I]t is clear that driving need not be illegal in order to give rise to reasonable suspicion" because such a standard "would allow investigatory stops only when there was probable cause to make an arrest."); *State v. Waldner,* 206 Wis. 2d 51, 57, 556 N.W.2d 681 (1996) ("The law allows a police officer to make an investigatory stop based on observations of lawful conduct so long as the reasonable inferences drawn from the lawful conduct are that criminal activity is afoot.").

¶ 48. In evaluating whether an investigatory traffic stop is supported by reasonable suspicion, the officer must have more than an "inchoate and unparticularized suspicion or hunch." *Post,* 301 Wis. 2d 1, ¶ 10. Rather, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the traffic stop. *Id.* This determination is based on "whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." *Id.,* ¶ 13.

¶ 49. The determination of whether a stop was objectively reasonable turns on the facts of each individual case. Nevertheless, the *Waldner* and *Post* cases are instructive.

¶ 50. In *Waldner,* an officer observed a car driving on a main thoroughfare at a slow rate of speed at 12:30

in the morning. 206 Wis. 2d at 53. The car stopped briefly at an uncontrolled intersection. *Id.* Then, the car turned onto a cross-street and accelerated at a high rate of speed. *Id.* The officer observed the car park into a legal parking space, where the driver opened the car door and proceeded to dump the contents of a plastic glass onto the roadway. *Id.*

¶ 51. Under these circumstances, this court recognized that "any one of these facts, standing alone, might well be insufficient" to provide reasonable suspicion. *Id.* at 58. We further acknowledged that all of the acts were lawful and each could have an innocent explanation. *Id.* at 59.

¶ 52. However, when we looked at the totality of the facts taken together, we concluded that "the whole [was] greater than the sum of its individual parts," amounting to reasonable suspicion to warrant an investigative stop:

> The building blocks of fact accumulate. And as they accumulate, reasonable inferences about the cumulative effect can be drawn. In essence, a point is reached where the sum of the whole is greater than the sum of its individual parts. That is what we have here. These facts gave rise to a reasonable suspicion that something unlawful might well be afoot.

*Id.* at 58.

¶ 53. We were faced with a similar situation in *Post*. At 9:30 P.M., the officer witnessed a vehicle that was "canted such that it was driving at least partially in the unmarked parking lane." 301 Wis. 2d 1, ¶ 4. The officer followed Post's car and observed that the vehicle continued to weave in an "S-type" pattern between the center line and the parking lane over two blocks. *Id.*, ¶ 5. The officer later testified that the manner of Post's driving was a "clue that he may be intoxicated." *Id.*

¶ 54. In *Post,* we acknowledged that "weaving within a single lane can be insignificant enough that it does not [alone] give rise to reasonable suspicion," and further, that the officer "did not observe any actions that constituted traffic violations or which, considered in isolation, provided reasonable suspicion that criminal activity was afoot." *Id.,* ¶¶ 19, 28. However, when we considered the "totality of the circumstances," including crossing over into the parking lane, weaving within the single lane, and the time of night, we concluded that the officer "presented specific and articulable facts, which taken together with rational inferences from those facts, give rise to the reasonable suspicion necessary for an investigative stop." *Id.,* ¶ 37.

¶ 55. In this case, the circuit court carefully considered the evidence. Nevertheless, it erred by considering the facts articulated by Deputy Frami in isolation, and also by placing undue emphasis on whether any of these facts amounted to a violation of a law. Throughout its oral decision, the circuit court repeatedly stressed that Anagnos "ha[d] not broken any law" and that Deputy Frami lacked reasonable suspicion to stop Anagnos's vehicle because he erroneously determined that Anagnos violated two traffic laws.

¶ 56. When the totality of circumstances is considered in light of the constitutional principle that there need not be a violation of the law to give rise to a reasonable suspicion, a different picture emerges. The facts, as articulated by Deputy Frami, lead to a reasonable suspicion that the driver of the vehicle made a series of unusual and impulsive driving choices, suggestive of impairment.

¶ 57. In this case, Anagnos first attracted Deputy Frami's attention when he executed a turn by driving

600

over an elevated median that was five feet, eight inches in width. Deputy Frami testified that it "is not the usual type of barrier you're expected to be able to cross." Under these circumstances, an objectively reasonable officer would conclude that Anagnos's choice to cross that median, rather than turning right and executing a legal U-turn at the break in the median, raised a suspicion that Anagnos was driving in an unusual manner. Much like stopping at an uncontrolled intersection or weaving within a lane, executing a left turn over an elevated median that is more than five feet wide, though arguably not illegal, would encourage a reasonable officer to further monitor the driver.

¶ 58. Anagnos's subsequent actions, twice accelerating rapidly and executing a second left turn without signaling, could confirm to a reasonable officer that there was cause for suspicion. That suspicion would reasonably be heightened by the officer's experience that he is more likely to encounter impaired drivers at 1:15 in the morning.

¶ 59. Like the circuit court and the court of appeals, we recognize that Deputy Frami did not specifically testify that he suspected that Anagnos was impaired in some way. In fact, during the hearing, Deputy Frami was only asked to testify about the facts he observed. He was never asked about his subjective decision to execute the stop.

¶ 60. Nevertheless, this gap in the record is not determinative. The legal determination of reasonable suspicion is an objective test: "What would a reasonable police officer reasonably suspect in light of his or her training and experience." *Waldner*, 206 Wis. 2d at 56. Although the officer "must be able to point to specific and articulable facts" supporting reasonable suspicion,

*Post,* 301 Wis. 2d 1, ¶ 10, and an officer's subjective belief can be considered in the totality of the circumstances, *State v. Kyles,* 2004 WI 15, ¶¶ 23–30, 269 Wis. 2d 1, 675 N.W.2d 449, the legal determination of reasonable suspicion is by no means dependent upon the subjective belief of the officer. When we consider the totality of the facts and circumstances as building blocks, we conclude that Deputy Frami "presented specific and articulable facts, which taken together with rational inferences from those facts, give rise to the reasonable suspicion necessary for an investigative stop." *Post,* 301 Wis. 2d 1, ¶ 37.

¶ 61. Because the stop of Anagnos's vehicle was supported by reasonable suspicion, the circuit court erred in concluding that Anagnos was not lawfully placed under arrest. Under these circumstances, we reverse the court of appeals and remand to the circuit court to revoke Anagnos's driving privileges under Wis. Stat. § 343.305(9)(d).

V

¶ 62. In sum, we conclude that Wis. Stat. § 343.305(9)(a)5.a. does not limit the defendant to contesting whether the officer had probable cause to believe the defendant was operating while under the influence of an intoxicant. The language of the statute provides that a defendant may also contest whether he was lawfully placed under arrest. As part of this inquiry, the circuit court may entertain an argument that the arrest was unlawful because the traffic stop that preceded it was not justified by either probable cause or reasonable suspicion.

¶ 63. When we consider the totality of the facts and circumstances in this case, we conclude that the arresting officer pointed to specific and articulable

602

facts, which taken together with rational inferences from those facts, give rise to the reasonable suspicion necessary for an investigative stop. Because the stop of Anagnos's vehicle was supported by reasonable suspicion, the circuit court erred in concluding that the stop was unconstitutional and that Anagnos was not lawfully placed under arrest. Under these circumstances, we reverse the court of appeals and remand to the circuit court to revoke Anagnos's operating privilege under Wis. Stat. § 343.305(9)(d).

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.

¶ 64. N. PATRICK CROOKS and DAVID T. PROSSER, J.J., did not participate.

¶ 65. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). While I join the majority opinion, I write separately to clarify what the majority opinion does and does not address. The majority opinion reverses the decision of the court of appeals that affirmed the circuit court's order dismissing the State's charge against Dimitrius Anagnos for improperly refusing to take a chemical test for the purpose of determining the presence or quantity of alcohol in his blood or breath, contrary to Wisconsin's implied consent law, Wis. Stat. § 343.305. Both the circuit court and the court of appeals determined that the law enforcement officer's traffic stop of Anagnos's vehicle was unconstitutional, and therefore, Anagnos was not "lawfully placed under arrest for [a] violation of s. 346.63(1)" pursuant to § 343.305(9)(a)5.a. *See* majority op., ¶¶ 16–18. Consequently, both courts concluded that Anagnos's refusal to take the test was not improper. *See* § 343.305(9)(d). This court reverses, holding that the traffic stop of

603

Anagnos's vehicle was supported by reasonable suspicion. *See* majority op., ¶ 5. Accordingly, the majority opinion remands the cause to the circuit court with instructions to revoke Anagnos's operating privilege pursuant to § 343.305(9)(d), (10).

¶ 66. In other words, the majority opinion addresses only the State's refusal charge against Anagnos. The majority opinion does not address the separate charge against Anagnos for operating a motor vehicle while under the influence of an intoxicant (OWI), contrary to Wis. Stat. § 346.63(1)(a). Moreover, because this court concludes, for purposes of the refusal charge, that the traffic stop of Anagnos's vehicle was supported by reasonable suspicion and was therefore constitutional, the majority opinion does not address what, if any, impact the opposite conclusion might have in a subsequent prosecution of the separate OWI charge. *See id.*, ¶ 25 n.7 (clarifying that the majority opinion does not decide "what preclusive effect, if any, a determination in a refusal hearing that the person was not lawfully placed under arrest would have in a subsequent prosecution for OWI").

¶ 67. A refusal charge under Wis. Stat. § 343.305(9) is distinct from charges of OWI or operating a motor vehicle with a prohibited alcohol concentration (PAC) under Wis. Stat. § 346.63. Indeed, Wis. Stat. § 343.305(9)(d) clarifies that the determination on a refusal charge "does not preclude the prosecution of the person for violation of s. 346.63(1), (2m), (5) or (7) or a local ordinance in conformity therewith . . . ."[1]

---

[1] In its entirety, Wis. Stat. § 343.305(9)(d) states:

At the close of the [refusal] hearing, or within 5 days thereafter, the court shall determine the issues under par. (a)5. or (am)5. If all issues are determined adversely to the person, the

¶ 68. Likewise, despite the impressions of the circuit court and the parties in the instant case, *see* majority op., ¶¶ 17 & n.5, 25 n.7, a refusal hearing is distinct from a hearing that may be held in the prosecution of a separate OWI or PAC charge, such as a suppression hearing. A refusal hearing is a special proceeding in which rules of civil, not criminal, procedure apply. *State v. Krause,* 2006 WI App 43, ¶ 9, 289 Wis. 2d 573, 712 N.W.2d 67. In addition, because a refusal hearing is not criminal in nature, the constitutional right to counsel does not attach. *Id.,* ¶ 11. Moreover, the State's burden of proof at a refusal hearing is "substantially less than at a suppression hearing." *State v. Wille,* 185 Wis. 2d 673, 681, 518 N.W.2d 325 (Ct. App. 1994). At a refusal hearing, the State is required to "present evidence sufficient to establish an officer's probable cause to believe the person was driving or operating a motor vehicle while under the influence of an intoxicant." *State v. Nordness,* 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986). To that end, the State need persuade the circuit court only that the officer's account is plausible. *Id.* at 36; *Wille,* 185 Wis. 2d at 681. By contrast, at a suppression hearing on an OWI or PAC charge, the State is required to present evidence sufficient to establish that probable cause existed to a reasonable certainty. *Nordness,* 128 Wis. 2d at 36. A mere possibility is not enough. *State v. Paszek,* 50 Wis. 2d 619, 625, 184 N.W.2d 836 (1971). Given that difference in burden of proof, it has been the law since

court shall proceed under sub. (10). If one or more of the issues is determined favorably to the person, the court shall order that no action be taken on the operating privilege on account of the person's refusal to take the test in question. This section does not preclude the prosecution of the person for violation of s. 346.63(1), (2m), (5) or (7) or a local ordinance in conformity therewith, or s. 346.63(2) or (6), 940.09(1) or 940.25.

1994 that a defendant, unsuccessful at a refusal hearing, is not precluded from relitigating the issue of probable cause at a subsequent suppression hearing on his or her OWI or PAC charge. *Wille,* 185 Wis. 2d at 682.

¶ 69. The instant case concerns a refusal hearing, not a suppression hearing. For purposes of the refusal charge only, this court is deciding that the traffic stop of Anagnos's vehicle was supported by reasonable suspicion, and therefore, in light of his other concessions, Anagnos improperly refused to take a chemical test for the purpose of determining the presence or quantity of alcohol in his blood or breath. The majority opinion does not address the separate charge against Anagnos for OWI. I write separately to clarify that important distinction.

¶ 70. Accordingly, I respectfully concur.

¶ 71. I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this concurrence.