PER CURIAM.
¶1 Brandon J. Hand appeals pro se from judgments of convictions in two drug cases and from the order denying his motion for postconviction relief. We affirm.
¶2 Both of Hand's drug cases involved the assistance of a confidential informant (CI). In his 2009 case, a CI told Racine Police Investigator Alfred Fellion that Hand was selling drugs out of his vehicle, a Dodge Durango with license plate 967NFC in a particular area of Racine. The tag matched a 1999 Dodge Durango registered to Hand. Fellion passed the information on to Officer Michael Ditscheit.
¶3 Ditscheit and Officer Christopher Blackmore located the vehicle in the described area and effected a traffic stop. Blackmore and Ditscheit approached the driver's and passenger's sides, respectively. Blackmore ordered Hand to exit the car for the officers' safety, knowing the connection between drugs and guns. Hand remained seated, repeatedly asking why he had been stopped. Seeing Hand move his hand toward the gear shift, Blackmore, concerned Hand meant to drive off, ordered him to exit or he would be tased. Hand then complied. When the vehicle doors opened, the officers detected a "strong" odor of burnt marijuana. In the ensuing warrantless search, they found cocaine, marijuana, a semiautomatic handgun, and $700 in small-denomination bills. Hand unsuccessfully moved to suppress the evidence, contending the officers had neither reasonable suspicion to stop his vehicle nor probable cause to search it.
¶4 In Hand's 2011 case, a CI bought crack cocaine from Hand in two controlled buys. The 2009 and 2011 cases were handled together for Hand's pleas and sentencing. He pled guilty in the 2009 case to possession of a firearm by a felon and possession of cocaine with intent to deliver, both as a repeater, and, in the 2011 case, to delivery of cocaine and felony bail jumping. The court sentenced him to an aggregate sentence of ten years' initial confinement and ten years' extended supervision.
¶5 Postconviction, Hand, acting pro se, asserted that the circuit court erred in denying his motion to suppress evidence in his 2009 case; that, in his 2011 case, trial counsel was ineffective for not moving to suppress video surveillance recordings the CI made of the drug buys; and that in both cases the State breached the plea agreement. He also contended that DNA surcharges were improperly imposed and that the court relied on improper sentencing factors.
¶6 The circuit court agreed with Hand in regard to the DNA surcharges. Hand now appeals the order only in regard to the motion-to-suppress and ineffectiveness claims. The cases were consolidated for appeal.
¶7 Hand first argues that he was denied his right to present a defense because the court did not ensure that all six witnesses he wanted to have testify at the postconviction motion hearing were subpoenaed.
¶8 A defendant's constitutional right to present a defense to a criminal charge, see U.S. CONST. amend. VI and WIS. CONST. art. I, § 7, is fundamental and essential to "assur[ing] both fairness and reliability in the ascertainment of guilt and innocence." Chambers v. Mississippi , 410 U.S. 284, 302 (1973) ; State v. Scheidell , 227 Wis. 2d 285, 293-94, 595 N.W.2d 661 (1999). Hand's guilt was determined by his choice to plead guilty. The right does not extend to a postconviction motion hearing.
¶9 The circuit court thus had the discretion whether to issue subpoenas on Hand's behalf. See WIS. STAT. § 885.01(1) (2015-16) (a judge may issue a subpoena).[1] It subpoenaed Fellion, Ditscheit, Blackmore, and Hand's defense counsel. Ditscheit, Blackmore, and defense counsel appeared. The court found Fellion to be unavailable, as he had retired and moved and could not be located.
¶10 Hand also wanted the court to subpoena Assistant District Attorney Sharon Riek, who prepared and notarized the affidavit Fellion signed regarding the CI's tip and Jeannie Skaarnes, the Presentence Investigation (PSI) report writer who, Hand claimed, prepared an inaccurate PSI. The court declined. It explained that it was for it to "construe whether they're relevant or not relevant or needed or not needed[,] ... the [witnesses] that are right to the core of your claims have been produced," giving Hand "full opportunity" to question them, that it accepted Hand's representations that the PSI was not wholly accurate, and that Hand failed to persuade it that the affidavit Riek drafted was fraudulent or false.
¶11 Nonetheless, Hand alleges that Riek's testimony was necessary to show that the affidavit contained falsehoods and that, without her or Fellion's testimony, "the State had no way of proving" that Fellion received a tip from a CI and communicated it to Ditscheit. He argues that Skaarnes' testimony would have shown that the PSI contained numerous inaccuracies and that she was not a neutral agent, as she was acquainted with Riek and was Hand's Probation and Parole Officer (P.O.) in another of his active cases.
¶12 First, Hand, not the State, bore the burden at the postconviction hearing. Second, the postconviction hearing was not an opportunity to relitigate the merits of the 2009 suppression motion.
¶13 Like the circuit court at the postconviction motion hearing, we, too, review only whether the trial court erred in denying it. Testifying to the information in the affidavit at the suppression hearing, Fellion testified that prior information from the CI had proved accurate and led to multiple arrests. The circuit court's finding that Fellion received a reliable tip and communicated it to Ditscheit is not clearly erroneous and its determination not to subpoena Riek and Skaarnes was well within a proper exercise of discretion.
¶14 Hand next complains that the circuit court erred in denying his motion to suppress because the stop and warrantless search were illegal. A valid investigatory traffic stop requires that an officer have reasonable suspicion that the person stopped has committed, or is about to commit, a law violation. State v. Colstad , 2003 WI App 25, ¶11, 260 Wis. 2d 406, 659 N.W.2d 394. The suspicion must be based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" on a citizen's liberty. Terry v. Ohio , 392 U.S. 1, 21 (1968). What is reasonable in a given situation depends upon the totality of the circumstances. See State v. Waldner , 206 Wis. 2d 51, 56-58, 556 N.W.2d 681 (1996). Individual facts that may be insufficient when viewed alone may amount to reasonable suspicion when taken together. Id. at 58.
¶15 Whether reasonable suspicion exists is a question of constitutional fact to which we apply a two-step standard of review. State v. Powers , 2004 WI App 143, ¶6, 275 Wis. 2d 456, 685 N.W.2d 869. We will uphold a circuit court's findings of historical fact unless they are clearly erroneous. Id. Based on those facts, we review de novo whether a reasonable suspicion justified the stop. Id.
¶16 After Fellion, Ditscheit, and Blackmore testified at the suppression hearing, the court made the following findings. Fellion received a call from the CI, who named Hand by name, said there were multiple bags of marijuana in Hand's vehicle, and gave details regarding the vehicle's make and model, license plate, and area of travel. Based on the information and having worked with the CI before, Fellion believed the CI was calling shortly after observing Hand. The described vehicle and tag checked out as being registered to Hand. Fellion relayed the information to Ditscheit. Ditscheit and Blackmore located the described vehicle in the specified area. "In some circumstances, information contained in an informant's tip may justify an investigative stop." State v. Rutzinski , 2001 WI 22, ¶17, 241 Wis. 2d 729, 623 N.W.2d 516.
¶17 In addition, Fellion stated in a later affidavit that the CI had supplied information leading to at least four other arrests within the past year and involving at least fifteen other drug dealers that on each occasion law enforcement verified as correct. A CI may be deemed more trustworthy if he or she has previously provided truthful information. See State v. Paszek , 50 Wis. 2d 619, 630, 184 N.W.2d 836 (1971).
¶18 The court concluded that the officers had reasonable suspicion justifying the stop of the vehicle. We agree. The court's findings are not clearly erroneous. The officers had reasonable suspicion to effect the investigatory stop.
¶19 Hand also asserts that the officers lacked probable cause to search the vehicle. "The warrantless search of an automobile is justified when the police have probable cause to believe that an automobile, found in a public place, contains evidence of a crime ...." State v. Caban , 210 Wis. 2d 597, 607, 563 N.W.2d 501 (1997). The court found probable cause because the officers smelled a strong odor of burnt marijuana when Hand and his passenger opened the doors to exit. "The unmistakable odor of marijuana coming from an automobile provides probable cause for an officer to believe that the automobile contains evidence of a crime," and, therefore, probable cause to search it. State v. Secrist , 224 Wis. 2d 201, 210, 589 N.W.2d 387 (1999).
¶20 Hand launches numerous attacks against the court's conclusion. He contends he was not defying Blackmore's orders to exit but simply was asking why he had been stopped. He asserts that, under Brendlin v. California , 551 U.S. 249 (2007), he had a constitutional right to challenge the stop before getting out. Hand misreads Brendlin . The issue there was whether a passenger is seized during a traffic stop and thus can challenge the stop-but by a motion to suppress evidence in court, not at the site. Id. at 251. Hand also asserts that, if the odor was "strong," the officers would have smelled it while he and his passenger still were in the vehicle with its partially opened windows. That finding is not clearly erroneous, and we will not disturb it.
¶21 Hand next complains that Blackmore testified at the suppression hearing that he took out his taser after Hand declined to exit because, with the vehicle still running, it "looked like [Hand] was grabbing for the shifter," yet the circuit court found that Blackmore "saw Mr. Hand grab for the shifter." He argues that the circuit court's finding in that regard therefore is clearly erroneous. Hand draws too fine a point. The focus in both Blackmore's testimony and the court's finding was that people sometimes suddenly drive off if they have or are involved with something illegal and that, had Hand done so, Blackmore could have been injured. The finding is not clearly erroneous.
¶22 Hand goes on. He argues that probable cause to search was lacking because Ditscheit and Blackmore themselves did not receive the tip from the CI, Fellion only "allegedly" passed it on to Ditscheit, and Ditscheit and Blackmore had no personal knowledge of the CI's reliability. Accordingly, he asserts, the "collective knowledge" doctrine cannot apply. Also, relying on United States v. Woods , 544 F.2d 242, 260 (6th Cir. 1976), Hand asserts that, for the search to be valid, Fellion had to order Ditscheit and Blackmore to conduct it. We disagree.
¶23 Under the collective knowledge doctrine, the officer at the scene may rely on the collective knowledge of the department. State v. Wille , 185 Wis. 2d 673, 683, 518 N.W.2d 325 (Ct. App. 1994). It is not necessary that the officer(s) at the scene personally possessed the requisite knowledge to establish probable cause. Johnson v. State , 75 Wis. 2d 344, 349-50, 249 N.W.2d 593 (1977). In Woods the original officer with the information ordered a second officer to make the arrest, but the case in no way predicates a finding of probable cause on such an order.
¶24 The court found that the CI gave Fellion a tip that appeared and proved to be credible, the CI was reliable, and the officers smelled burnt marijuana. The officers thus had probable cause to search the vehicle. See Secrist , 224 Wis. 2d at 210.[2]
¶25 Pressing on, Hand nonetheless contends the search of his vehicle was illegal under Arizona v. Gant , 556 U.S. 332 (2009), and that the circuit court erred in concluding that Gant does not apply. Under Gant , police are authorized to search a vehicle incident to a recent occupant's arrest "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Id. at 343 ; see also State v. Dearborn , 2010 WI 84, ¶26, 327 Wis. 2d 252, 786 N.W.2d 97 (citing Gant ). Hand points out that police handcuffed him upon exiting the vehicle.
¶26 We agree that Gant does not apply. The search was not conducted incident to an arrest. The officers handcuffed Hand out of concern for their safety; their experience taught them there often is a connection between drugs and guns. From the smell of burnt marijuana, they searched the vehicle based on probable cause that the vehicle contained evidence of criminal activity. They arrested him only after finding drugs and a gun in the search.
¶27 The CI involved in the controlled drug buys in Hand's 2011 case video recorded the transactions. Hand contends he should have been allowed to withdraw his guilty pleas in that case because his trial counsel was ineffective for not moving to suppress the recorded evidence, as the recordings were not sealed. He claims the use of the videos led him to plead guilty. This argument fails.
¶28 Post-sentencing plea withdrawal is in the discretion of the circuit court and "will not be disturbed unless the defendant shows that it is necessary to correct a manifest injustice." State v. Cross , 2010 WI 70, ¶4, 326 Wis. 2d 492, 786 N.W.2d 64. Ineffective assistance of counsel constitutes a manifest injustice. State v. Taylor , 2013 WI 34, ¶49, 347 Wis. 2d 30, 829 N.W.2d 482. To prove ineffective assistance, a defendant must prove that counsel's performance was both deficient and prejudicial. Strickland v. Washington , 466 U.S. 668, 687 (1984) ; State v. Johnson , 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). Counsel's performance is deficient if he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Johnson , 153 Wis. 2d at 127 (citation omitted). Proving prejudicial performance " 'requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " Id. (citation omitted).
¶29 WISCONSIN STAT. § 968.30 addresses court-ordered intercepts of communications, such as wiretaps. Section 968.30(7)(a) sets forth the procedure that applies when law enforcement seeks a court order authorizing such intercepts. When the order expires, the recordings must be filed with the court, which then must seal them. Id. If the court-ordered recording is left unsealed without good reason, it may not be disclosed or used. Id. Hand insisted that counsel move to suppress the video recording because it was not sealed.
¶30 Counsel explained, and the circuit court agreed, that WIS. STAT. § 968.30(7)(a) did not apply. We also agree. The video recordings were not made pursuant to court order, but with the consent of the CI, one of the parties to the recording. A court order generally is not necessary when one party to the communication consents to its interception. See WIS. STAT. § 968.31(2)(b), (c). The sealing requirement does not apply to one-party consent recordings not conducted pursuant to court order. The court stated that, because the sealing requirement does not apply, it would not have granted a suppression motion. Counsel is not ineffective for declining to make a motion that would have been denied. State v. Berggren , 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110.
¶31 Finally, Hand contends the circuit court erred in denying his request for resentencing based on his claim that the sentencing court relied on inaccurate information in the PSI and false statements by the prosecutor. "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." State v. Tiepelman , 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. "A defendant who requests resentencing due to the circuit court's use of inaccurate information at the sentencing hearing 'must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing.' " Id. , ¶26 (citations omitted).
¶32 Defense counsel told the sentencing court that he and Hand had reviewed the PSI and had no corrections to make. In his lengthy allocution, Hand said nothing about PSI errors.
¶33 In his postconviction motion brief, however, he spends five pages reciting alleged falsehoods. For example, in regard to an obstructing charge he picked up in Jefferson County for giving a false name to a police officer who stopped him, the agent wrote that Hand was "adamant that it is illegal for Racine County to charge him with bail jumping for an offense that took place in a different jurisdiction." Hand claims he actually told her he technically was not on bail at the time of the obstructing charge.
¶34 The agent also wrote that in the 2009 case, he "made statements to police" that the drugs were for personal use and he had no idea where the gun came from, because, as he often let people use his car in exchange for drugs, "[s]omeone may have forgot it in there." Hand contends the PSI notation is false, as the police reports document that he "did not provide a statement to police."
¶35 The PSI also states that Hand said he could not pay for the many tickets he accumulated for driving without a valid license, so he went on driving without one "and continued to receive more citations"-but, Hand asserts, it was only one. He claims other errors of similar weight.[3] The flaw in Hand's argument in regard to these alleged errors is that he makes no attempt to show that the court relied on any of them at sentencing.
¶36 Hand also suggests that Skaarnes was not neutral because she was his P.O. in an unrelated case and she and Riek "knew each other." He offers nothing concrete to show that Skaarnes knew Riek in anything more than a professional capacity or was biased toward the State or against him, or that the sentencing court relied on, or even knew of, Skaarnes' connection to either him or Riek.
¶37 Similarly, Hand argues that a different prosecutor gave inaccurate information at sentencing, referring to him "lying to law enforcement," to "violent crime" in his past, and to him "using firearms." He disputes a history of violent crimes and says that charges for felon in possession of a firearm were fluke incidents where he somehow ended up with a gun just as police arrived. Once again, Hand points to nothing to show that the statements are inaccurate or, if they were, that the court relied on them at sentencing.
By the Court .-Judgments and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless noted.

The odor of marijuana likewise gave the officers probable cause to arrest because the odor was unmistakable and could be "linked to a specific person or persons because of the circumstances in which the odor is discovered or because other evidence links the odor to the person or persons." State v. Secrist , 224 Wis. 2d 201, 204, 589 N.W.2d 387 (1999).

Hand morphs his sentencing argument into one of ineffective assistance for counsel's failure to direct the court's attention to the "erroneous" information in the PSI after counsel told him the items did not rise to a level worth disputing. "A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel." State v. Elm , 201 Wis. 2d 452, 464, 549 N.W.2d 471 (Ct. App. 1996).