STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey P. POWERS, Defendant-Appellant.

Court of Appeals

*No. 03–2450–CR. Submitted on briefs May 5, 2004.—Decided June 16, 2004.*

2004 WI App 143

(Also reported in 685 N.W.2d 869.)

458

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Walter A. Piel, Jr.* of *Raymond Law Office*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Stephen W. Kleinmaier*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J. Jeffrey P. Powers challenges the investigatory stop that led to his arrest on a fifth offense operating while intoxicated charge (OWI). Powers insists there is no evidence that the citizen informant who turned him in to the police was known to be reliable because there was no evidence that the citizen informant actually saw him operate a motor vehicle or violate the law. He further argues that the citizen

informant had no articulable facts indicating why the citizen thought Powers was intoxicated. We reject Powers' appeal and affirm for the reason that under the totality of the circumstances, there was a reasonable suspicion that criminal activity may be occurring.

## BACKGROUND

¶ 2. At 10:38 a.m., Officer Ronald Bethia of the City of Brookfield Police Department was dispatched to an Osco Drug Store. He was informed that a clerk from the Osco store, with the name of Corona, had called the department to report that "an intoxicated man had come in to make purchases at the store buying beer, a little outfit, and something else." Bethia was told that Corona had related that the man's credit card had been declined and he had left Osco stating that he would be coming back with money. Corona also supplied a description of the truck and its license plate number.

¶ 3. When Bethia arrived at the Osco store, he located the truck described by Corona and parked to keep it under observation. Shortly after the officer put the vehicle under observation, he saw an individual, later identified as Powers, carrying a case of beer and "a bib or some type of small item," walking unsteadily to the truck. Bethia watched Powers get into the truck, start it and drive through the parking lot to the entry onto a public street. As Powers prepared to pull the truck onto the public street, Bethia activated his emergency lights. Powers did not immediately respond to the emergency lights and Bethia tapped his siren at least one to two times in an attempt to attract Powers' attention. Powers finally turned into another parking lot and stopped in front of a restaurant, where he was confronted by Bethia.

¶ 4. Powers was charged with two felony counts, fifth offense OWI, in violation of WIS. STAT. §§ 346.63(1)(a), 346.65(2)(e) and 343.30(1q)(b), and fifth offense operating a motor vehicle with a prohibited alcohol concentration (PAC), in violation of §§ 346.63(1)(b), 346.65(2)(e) and 343.30(1q)(b). He filed a motion seeking to suppress all of the evidence, arguing that Bethia lacked reasonable suspicion to conduct an investigative traffic stop. After a hearing at which Bethia was the only witness, the trial court denied the motion. The court, relying upon *State v. Rutzinski*, 2001 WI 22, 241 Wis. 2d 729, 623 N.W.2d 516, and *State v. Sisk*, 2001 WI App 182, 247 Wis. 2d 443, 634 N.W.2d 877, held that the tip from the Osco clerk, Corona, was reliable and Bethia properly relied upon that tip and his personal observations in accumulating reasonable suspicion to conduct an investigatory stop. In due course, Powers entered a guilty plea to one felony count and was found guilty; he now appeals the denial of his motion to suppress.

¶ 5. Powers challenges the reasonable suspicion to support the investigative stop. First, he asserts there was no showing the Osco clerk was reliable since the clerk was not known to be reliable in the past. Second, he claims the basis of the clerk's knowledge was weak or nonexistent because the clerk did not see him drive his truck or violate the law. Finally, he contends there was no information on why the clerk thought he was intoxicated.

## STANDARD OF REVIEW

¶ 6. The sole question we must address in this case is whether Bethia had the requisite reasonable

suspicion to justify his stop of Powers. The determination of reasonable suspicion for an investigatory stop is a question of constitutional fact. *State v. Williams*, 2001 WI 21, ¶ 18, 241 Wis. 2d 631, 623 N.W.2d 106. We apply a two-step standard of review to questions of constitutional fact. *Id.* First, we review the trial court's findings of historical fact and uphold them unless they are clearly erroneous. *Id.* Second, we review the determination of reasonable suspicion de novo. *Id.*

¶ 7. The temporary detention of a citizen constitutes a seizure within the meaning of the Fourth Amendment and triggers Fourth Amendment protections. *State v. Harris*, 206 Wis. 2d 243, 253, 557 N.W.2d 245 (1996). A police officer may, in the appropriate circumstances, approach an individual for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968). When police make an investigative stop of a person, it is not an arrest and the standard for the stop is less than probable cause. *State v. Allen*, 226 Wis. 2d 66, 70–71, 593 N.W.2d 504 (Ct. App. 1999). The standard is reasonable suspicion, "a particularized and objective basis" for suspecting the person stopped of criminal activity. *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citation omitted). When determining if the standard of reasonable suspicion was met, those facts known to the officer must be considered together as a totality of the circumstances. *State v. Richardson*, 156 Wis. 2d 128, 139–40, 456 N.W.2d 830 (1990).

## DISCUSSION

¶ 8. Before addressing Powers' arguments, we will

clarify when a seizure occurs. The trial court held that Powers was seized when Bethia activated his emergency lights. That is not the law in Wisconsin. In *State v. Kelsey C.R.*, 2001 WI 54, ¶ 33, 243 Wis. 2d 422, 626 N.W.2d 777, the supreme court held, "In order to effect a seizure, an officer must make a show of authority, and the citizen must actually yield to that show of authority." In this case, the seizure did not occur until Powers pulled off the public street, into a parking lot, and parked in front of a restaurant. Therefore, in considering whether the standard for reasonable suspicion has been met, we may include in the totality of the circumstances everything from the tip from the clerk at Osco to Powers' parking in front of the restaurant.[1]

¶ 9. Powers attacks the tip provided by the clerk at Osco; he contends that Bethia could not give it any credence. We begin by restating the obvious: when a caller provides his or her name, the tip is not anonymous; it is a tip from a citizen informant. *See Sisk*, 247 Wis. 2d 443, ¶ 8. In *Sisk*, we explained the significance of a tip from a known citizen:

> [I]f "an informant places his [or her] anonymity at risk, a court can consider this factor in weighing the reliability of the tip." *Williams*, 2001 WI 21 at ¶ 35 (quoting [*Florida v.*] *J.L.*, 529 U.S. [266,] 276 [2000], Kennedy, J., concurring). Further, when a caller gives his or her name, police need not verify the caller's identity before acting on the tip. *State v. Kerr*, 181 Wis. 2d 372, 381, 511 N.W.2d 586 (1994) (" '[W]hen an average citizen tenders information to the police, the

---

[1] Because Powers limits his challenge to the reasonable suspicion to support the investigative stop to the tip from the clerk, we will not discuss his failure to yield to the officer's show of authority when the officer attempted to stop Powers.

police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case." ') (citation omitted). As the Wisconsin Supreme Court declared, "we view citizens who purport to have witnessed a crime as reliable, and allow the police to act accordingly, even though other indicia of reliability have not yet been established." *Williams*, 2001 WI 21 at ¶ 36. *See also State v. Paszek*, 50 Wis. 2d 619, 631, 184 N.W.2d 836 (1971) (" 'A citizen who purports . . . to have witnessed a crime is a reliable informant even though his reliability has not theretofore been proved or tested.' ") (quoted source omitted). Dangerously, any other holding would require police to take critically important time to attempt to verify identification rather than respond to crimes in progress.

*Sisk*, 247 Wis. 2d 443, ¶ 9 (footnotes omitted). The inherent reliability of a citizen informant trumps Powers' argument that the clerk did not have a history of providing reliable information to law enforcement.

¶ 10. Powers insists that the clerk's tip is unreliable because the clerk did not observe Powers drive his truck "in a manner consistent with someone who was under the influence of an intoxicant." We conclude that the tip was reliable for several reasons.

¶ 11. First, the tip was based on first-hand observations. The undisputed evidence is that the clerk called the police, gave his or her name as Corona, and reported an intoxicated man was in the Osco store purchasing a case of beer, a small outfit and something else. Corona informed law enforcement that the individual's credit card had been rejected and he had left to get money to pay for his purchases. Corona also provided a description of the truck and a license plate number. From this undisputed evidence, several reasonable inferences arise: (1) Corona had face-to-face

464

contact with Powers and observed one or more indicia of intoxication—odor of alcohol, slurred speech, glassy eyes, etc., and (2) Corona had an unobstructed view of the parking lot that permitted Corona to observe Powers enter or exit the truck.

¶ 12. Second, while other cases have involved tips from informants who have observed erratic driving, the informant's failure to see the driver actually drive the vehicle is not fatal.[2] In *Rutzinski*, the arresting officer received a dispatch based upon a cell-phone call from an unidentified motorist advising of a truck driving erratically. *Rutzinski*, 241 Wis. 2d 729, ¶ 4. However, other jurisdictions have found tips to be reliable that come from employees of businesses who have observed individuals they believe to be drunk, whether or not those individuals were driving. In *State v. Riefenstahl*, 779 A.2d 675, 676 (Vt. 2001), an employee of a gas station called law enforcement, gave his name and reported a male operator was possibly intoxicated and driving; the caller provided a description of the vehicle and a license plate number. The Vermont Supreme Court held that "[t]he named informant's tip contained sufficient indicia of reliability to justify the stop." *Id.* at 677. In Connecticut, the appellate court upheld a traffic stop

_____

[2] It is not essential that the clerk actually saw Powers operate his truck in an erratic manner; improper driving is not an element of an OWI offense. "Although erratic driving may be evidence that the defendant is under the influence of an intoxicant, the statute 'does not require proof of an appreciable interference in the management of a motor vehicle.'" *State v. Gaudesi*, 112 Wis. 2d 213, 221, 332 N.W.2d 302 (1983). Because an OWI conviction does not require proof of erratic driving, proof of erratic driving is obviously not required for purposes of a reasonable suspicion.

initiated by a call from a nightclub employee that a patron was intoxicated and leaving the club. *State v. Bolanos*, 753 A.2d 943, 944–45 (Conn. App. Ct. 2000). In Kansas, the state supreme court concluded that a reasonable suspicion of criminal activity existed after police corroborated a tip from an anonymous caller who reported a possible drunk driver and gave a description of the vehicle and license plate number. *State v. Slater*, 986 P.2d 1038, 1044 (Kan. 1999). The Colorado Court of Appeals upheld a stop based on the tip from a clerk at a gas station who reported seeing an intoxicated male getting into a car. *Peterson v. Tipton*, 833 P.2d 830, 831–32 (Colo. Ct. App. 1992). Finally, the Minnesota Court of Appeals upheld a traffic stop based upon an initial call from a Burger King employee reporting a drunk driver at a Burger King restaurant. *Playle v. Comm'r of Pub. Safety*, 439 N.W.2d 747, 748 (Minn. Ct. App. 1989).

¶ 13. Third, the officer can rely upon the clerk's assessment that Powers was drunk; in Wisconsin, a layperson can give an opinion that he or she believes another person is intoxicated. *See State v. Bailey*, 54 Wis. 2d 679, 685, 196 N.W.2d 664 (1972). Other jurisdictions have upheld traffic stops based, in part, on a layperson's assessment that another person was intoxicated. *Slater*, 986 P.2d at 1046 ("[T]he mere fact that the tip includes only the conclusory statement that the suspect was drunk would not necessarily foreclose the prospect of the tip's reliability."); *Playle*, 439 N.W.2d at 749 ("A layperson is qualified to give an opinion as to whether a person is under the influence, based upon observations of that person."); *Bolanos*, 753 A.2d at 946 ("[L]aymen may testify as to their opinion of whether a

person is intoxicated.") (citation omitted); *People v. Willard*, 228 Cal. Rptr. 895, 897 (Cal. App. Dep't Super. Ct. 1986) ("The objective signs of intoxication are matters of common knowledge and experience.").

■■

¶ 14. Finally, Bethia independently verified the clerk's tip. The officer parked his squad so he would have a clear view of Powers' truck. A short time later, he saw Powers, carrying a case of beer and a bib or other small object, matching the clerk's description of what Powers purchased in the store, walking unsteadily to the truck, matching the description given by the clerk. Where a tip has a high degree of reliability because the informant identified himself or herself and the police independently verify the information before conducting a stop, the resulting stop is supported by reasonable suspicion. *See Sisk*, 247 Wis. 2d 443, ¶¶ 10–11. Other jurisdictions have also held that independent verification of an informant's tip is a relevant factor in assessing whether there was reasonable suspicion to conduct an investigative stop. *See Slater*, 986 P.2d at 1044 ("An officer may corroborate the tip by observing illegal activity or by finding the person and vehicle and the location as substantially described by the informant."); *Bolanos*, 753 A.2d at 946 (arresting officer "had a reasonable and articulable suspicion sufficient to stop the vehicle because of the officer's visual confirmation of the details of the tip").

## CONCLUSION

¶ 15. We hold, under the totality of the circumstances involved in this case, that the information given by the citizen informant and the police officer's corroboration of the information before the investigatory stop

were sufficiently reliable to provide the officer with a reasonable suspicion of criminal activity.

*By the Court.*—Judgment affirmed.