COURT OF APPEALS
DECISION
DATED AND FILED

February 19, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   **2019AP1488**

Cir. Ct. No.  **2019TR490**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

BARTOSZ MIKA,

   DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed*.

¶1   GUNDRUM, J.[1]   Bartosz Mika appeals from an order revoking his driver's license pursuant to WIS. STAT. § 343.305(10) for refusing to provide a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

requested breath sample following his arrest for operating a motor vehicle while intoxicated (OWI). Mika argues that the court entered the order in error because the traffic stop lacked the requisite reasonable suspicion and, thus, there was no lawful basis for it. Mika complains that, following the close of the State's case, the court agreed with him that the State failed to establish reasonable suspicion for the stop but then erred in sua sponte reopening the evidence portion of the hearing, adjourning the matter and, at the continued hearing, allowing the State to put in additional evidence on reasonable suspicion. Mika also insists that even with that additional evidence, the State still failed to establish reasonable suspicion for the stop. For the following reasons, we affirm the circuit court.

### *Background*

¶2 After Mika was arrested for OWI, he refused to submit to a breath test requested under Wisconsin's implied consent law, WIS. STAT. § 343.305(3)(a); the arresting officer gave him a notice of intent to revoke his operating privileges as required by § 343.305(9); Mika requested a refusal hearing; and said hearing was held. The relevant proceedings and evidence presented were as follows.

¶3 On June 10, 2019, Deputy Wayne Blanchard of the Walworth County Sheriff's Department testified that around 10:05 p.m. on February 18, 2019, he heard a dispatch "callout" of "an intoxicated male who was being disorderly with security staff at Alpine Valley" and had left in a dark vehicle with Illinois license plates. A security guard from Alpine Valley, "Deputy Ruszkiewicz," who was an off-duty deputy "of probably twenty-four plus years," had made the report to dispatch. Blanchard learned that Deputy Brody Fiedler was "in the area" and had located the vehicle and conducted a traffic stop.

2

¶4      Blanchard arrived on the scene and made contact with the driver of the vehicle, Mika, and observed slurred speech and an odor of intoxicants coming from his breath.  Ultimately, Blanchard had Mika perform field sobriety tests, leading to his arrest for OWI.  Blanchard provided extensive testimony demonstrating he had probable cause to believe Mika was intoxicated and had been operating his vehicle in that condition, as well as the necessary testimony to establish that Blanchard had read Mika the Informing the Accused form as required by WIS. STAT. § 343.305(4) and that Mika refused an alcohol breath test requested by Blanchard.[2]  The State rested after Blanchard's testimony.

¶5      Mika moved to dismiss the charge on the basis that the State "failed to produce any evidence of reasonable suspicion for the stop," adding that the State "failed to even produce the officer who made the stop."  The circuit court, sua sponte, continued the refusal hearing to a later date, stating that it needed to hear from the deputy who conducted the traffic stop, Deputy Fiedler.  The court stated to the prosecutor, "I don't know if you didn't know that he was the one who made the stop or not," and then continued more generally:

> It's an OWI and it's a refusal so in the interest of public safety I need to hold a full hearing in this regard.
>
> … I don't need anymore testimony about whether or not there was probable cause for him to arrest him at that point. From the field sobriety, from his observations of the defendant, that's not the question. The question for me is the stop and … if there's enough to link up the reason for the stop to this defendant. [The testimony from Blanchard was] not enough for this Court to link it, quite frankly. It's nothing on Deputy Blanchard. You needed to have Deputy

---

[2] On appeal, Mika does not challenge the evidence or circuit court's finding on any of these points, but only argues that the court erred in continuing the hearing for more testimony and that there was no lawful basis for the traffic stop.

3

Fiedler here. But because of the public interest and the Court determining whether or not this was a legitimate stop or not I need to hear from Deputy Fiedler.

So I am going to set this over for another date so that he can be brought in to testify. Again, I'm not hearing any more testimony with regard to anything after the stop. Clearly, there was probable cause to arrest and clearly the defendant refused and had no reason not to. It was unreasonable. But I need to be able to hear through credible testimony.

¶6 Mika objected to "adjourning this and providing [the] State more time to come prepared when they were ill prepared for today." The court reiterated that it was adjourning the hearing to afford an opportunity for Fiedler to testify because "it's a public safety concern. There's no doubt in my mind that he was driving drunk that night according to the testimony I already have. The question is whether or not they had the right to pull him over and that's what I need to determine …."

¶7 The refusal hearing continued on July 30, 2019. Before testimony began that day, Mika objected again to the court reopening the matter to allow for more testimony. The court responded:

Well you've made your argument again, and I disagree with it. It's the reason that I made the decision that I did back on June 10th. You're right, evidence had closed, parties had made their argument. But as you also stated the Court does have the discretion to reopen evidence if it believes that it's necessary in order to promote the interest of justice. I absolutely agree with you that one of the aspects of justice is protecting a defendant's rights. I also recognize that this is a civil matter, it's not a criminal matter. And I firmly believe that the interest of justice, it is a scale, especially in a civil case. It doesn't just include the defendant's rights. It also includes the rights of the public. The state here, quite frankly, made a mistake. They did not bring in the witnesses that they needed to have here for that hearing, but that's not the same as the fact that those witnesses did not exist and that the Court is somehow manipulating the evidence or the circumstances to make

something when there is nothing there. And, quite frankly, I do not agree with your argument to the Court that the Court is somehow assisting the state in this manner. I recognize that I reopened evidence to allow the second deputy to testify, but again, that's coming from the Court's perspective of being in the interest of the public and of public safety. It would have been very easy for the Court at the end of that other hearing to just say there's not enough here, I'm dismissing it. But the Court knew from the testimony of the deputy that did testify that there was other evidence out there that was necessary in order for this Court to engage in a full examination of the facts surrounding this incident involving this defendant and this civil matter of the refusal.

So for those reasons the Court made that determination I need to hear everything before I can make a decision on that; so that's what I did. That being said, you've made your record. You have preserved it. And I'm going to allow the other deputy who was on the scene and who actually made the traffic stop testify.

¶8 The State then presented Deputy Fiedler as a witness. Fiedler testified that he was dispatched to Alpine Valley "for a reported male that was intoxicated and disorderly" and "involved in an incident." Fiedler was advised that "there was an off-duty deputy who was on scene" who reported the incident and that "the male had left in a black Audi with Illinois plates." Responding to the Alpine Valley area, which was less than a mile from his location, Fiedler observed within "a couple minutes, not even," "a black Audi coming … from the Alpine area," in "the direct vicinity," "turning southbound onto Highway 120" "heading towards Illinois."

¶9 Fiedler observed the driver of the black Audi, Mika, to be driving in an "abnormal" way. Specifically, he observed that as Mika approached the stop sign at Highway 120, he stopped, then rolled forward, and then stopped again, even though there was "no other traffic around." As Mika started south on Highway 120, Fiedler observed that Mika's vehicle had Illinois license plates, and

he followed Mika. When he got behind Mika, Mika "was going extremely slow … It was slow enough that it would have impeded other traffic had there been other vehicles around while under the speed limit." While he could not estimate how fast Mika had been traveling, Fiedler stated: "I could tell you it was slower, slow enough that I felt it was impeding traffic. When I was behind him I recognized it to be odd and unusual for the circumstances." Fiedler added that even if he had not received the report of the driver of the black Audi being intoxicated, it was possible he would have pulled the vehicle over due to how Mika was driving.

¶10     Following Fiedler's testimony, the circuit court inquired if either the State or Mika had any further testimony to present. Each responded in the negative. The court ruled that Fiedler had reasonable suspicion to conduct the traffic stop on Mika and with that rejected Mika's challenge to the refusal. Mika appeals.

## *Discussion*

Continuation of Refusal Hearing

¶11     Mika acknowledges that a circuit court "may on its own motion reopen for further testimony in order to make a more complete record in the interests of equity and justice." *See State v. Hanson*, 85 Wis. 2d 233, 237, 270 N.W.2d 212 (1978). We will affirm such a decision unless the court erroneously exercised its discretion in making it. *Stivarius v. DiVall*, 121 Wis. 2d 145, 157, 358 N.W.2d 530 (1984).

¶12     Despite recognizing that it is within the circuit court's discretion to reopen testimony on the court's own motion, Mika complains that the State did not

request that testimony be reopened, but that the court sua sponte reopened it after it determined the State failed to meet its burden to show reasonable suspicion for the traffic stop.  Of course, as just noted, **Hanson** holds that it *is* appropriate for a court to do this "in order to make a more complete record in the interests of equity and justice."  **Hanson**, 85 Wis. 2d at 237.  Nonetheless, Mika asserts "the reopening of evidence in this matter was not done in the interests of equity and justice, but rather, because the Circuit Court made a determination that only a finding of guilt would result in 'justice.'"  Mika bases his assertion on the court's statement that "[t]here's no doubt in my mind that he was driving drunk that night."  He insists that the court's comment about Mika driving "drunk" and sua sponte reopening of evidence significantly undermines the appearance of a fair trial.  Noting the court's statement that it was reopening the evidence in "the interest of the public," Mika writes:  "Presumably, the Circuit Court feels that if this Defendant, who the Circuit Court has already made a determination was driving drunk, is not found guilty, that the interests of the public would be harmed."  Mika has not convinced us that the court erroneously exercised its discretion.

¶13    At a refusal hearing, a defendant may contest whether there was probable cause to believe the defendant was OWI, whether the officer properly read the Informing the Accused form to him, and whether the defendant improperly refused to submit to the breath test.  *See* WIS. STAT. § 343.305(9)(a)5.; **State v. Anagnos**, 2012 WI 64, ¶27, 341 Wis. 2d 576, 815 N.W.2d 675.  Blanchard provided sufficient testimony with regard to those required findings, as the court so found and as Mika does not dispute.  Under § 343.305(9)(a)5.a. and our supreme court's decision in **Anagnos**, however, "a defendant may also contest whether he was lawfully placed under arrest" prior to his refusal.  *See*

§ 343.305(9)(a)5.a.; *Anagnos*, 341 Wis. 2d 576, ¶¶4, 27. "As part of this inquiry, the circuit court may entertain an argument that the arrest was unlawful because the traffic stop that preceded it was not justified by either probable cause or reasonable suspicion." *Anagnos*, 341 Wis. 2d 576, ¶4. Because Blanchard did not make the traffic stop himself or observe Mika's driving, the circuit court determined there was insufficient evidence to counter Mika's challenge to the stop on this basis—a challenge Mika first raised following the close of the State's testimony at the refusal hearing.

¶14     While it is often the case that the State need only call one officer to provide all the testimony required for a refusal hearing, in this case, the officer who observed Mika's questionable driving and executed the traffic stop, Fiedler, was different from the officer who conducted most of the OWI investigation with Mika and with whom Mika refused to cooperate with the breath test, Blanchard. Following Mika's challenge to the stop on reasonable suspicion grounds, the circuit court expressed that it wanted to hear from the deputy who actually made the stop, Fiedler, so it could make its decision on the legality of the stop based upon "a full examination of the facts surrounding this incident." It is consistent with the interests of justice for a court, as part of its "inquiry" into whether there was a lawful basis for the stop, *Anagnos*, 341 Wis. 2d 576, ¶4, to make its decision on whether there was a constitutional violation, such as the lack of reasonable suspicion for a temporary investigatory seizure, based upon all the facts available in a case.

¶15     After Blanchard's testimony on the first day of the refusal hearing, the only issue remaining was whether there was reasonable suspicion for the stop. The circuit court recognized the State had erred in failing to have Fiedler, the deputy who made the traffic stop, at the hearing in the event Mika raised a specific

challenge to the stop, as he did. Despite Mika's accusations that the court appeared to have an agenda and was out to "get" him, we have no reason to doubt that if, after all the relevant evidence was presented, the record showed that Fiedler lacked reasonable suspicion to stop Mika, the court would have so held and dismissed the charge. Mika no doubt had hoped he had found a "gotcha" when the State failed to produce Fiedler for the first day of the refusal hearing. He has failed, however, to meet his appellate burden to demonstrate that the court erroneously exercised its discretion in adjourning the hearing so that the sole remaining issue in the case—the lawfulness of the traffic stop—could be decided based upon the additional evidence the stopping officer would have to offer, even if that meant foiling Mika's "gotcha."

Lawfulness of the Traffic Stop

¶16     Mika next asserts that even with the additional testimony provided by Fiedler, the State still failed to establish a lawful basis for the stop. We disagree.

¶17     Reviewing a circuit court's ruling on whether there was reasonable suspicion or probable cause for a traffic stop, we apply the clearly erroneous standard to the court's factual findings; however, our review of whether the facts satisfy the required constitutional standard is de novo. *Anagnos*, 341 Wis. 2d 576, ¶21. In deciding whether an unlawful seizure has taken place under the Fourth Amendment, the ultimate question is whether the officer acted reasonably. *See State v. Weber*, 2016 WI 96, ¶18, 372 Wis. 2d 202, 887 N.W.2d 554. Here, the question for us is whether the evidence showed that Fiedler acted reasonably in seizing Mika by stopping him for a temporary investigative detention.

¶18   To begin, through his own observations alone, Fiedler had probable cause to justify the traffic stop on the basis that Mika appeared to be impeding traffic.  WISCONSIN STAT. § 346.59(1) provides:  "No person shall drive a motor vehicle at a speed so slow as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or is necessary to comply with the law."  After Fielder pulled out behind Mika, Mika was "going extremely slow in the lane of traffic … slow enough that it would have impeded other traffic had there been other vehicles around."  While Fielder could not provide an estimate of just what speed Mika was traveling, he did testify that "it was slower, slow enough that I felt it was impeding traffic.  When I was behind him I recognized it to be odd and unusual for the circumstances."  He again emphasized that it was "odd or abnormal for a driver to be going that slow."

¶19   While there was no other traffic in the immediate area at the time Fiedler observed Mika traveling abnormally slow, Fielder himself, positioned behind Mika, constituted "traffic" whose "normal and reasonable movement" appeared to be impeded.  The evidence demonstrates that a reasonable officer aware of the facts of which Fiedler was aware would have had probable cause to pull Mika over and cite him for impeding traffic.  Whether the State would have prevailed at a trial on that charge cannot be said—maybe, maybe not.  But there was sufficient evidence here to constitute probable cause to cite him for that offense.

¶20   Fiedler's temporary investigative seizure of Mika was also justified on the basis that a reasonable officer armed with the information Fiedler possessed would have suspected Mika was driving while drunk.  Mika insists Fiedler's reasonable suspicion determination could not be based upon the "vague" report of the security guard/off-duty deputy to dispatch that the driver of the dark Audi was

"intoxicated." He is mistaken. In determining that there was reasonable suspicion for an OWI investigatory stop in *State v. Powers*, 2004 WI App 143, ¶13, 275 Wis. 2d 456, 685 N.W.2d 869, we stated the officer "c[ould] rely upon the [drug store] clerk's assessment that Powers was drunk; in Wisconsin, a layperson can give an opinion that he or she believes another person is intoxicated." *See also State v. Mays*, No. 2018AP571-CR, unpublished slip op. ¶16 (WI App Nov. 7, 2018).

¶21    In this case, Fiedler had an even stronger basis to rely upon the report provided to dispatch that the driver of the dark Audi was intoxicated in that Fiedler knew that it was an off-duty sheriff's deputy who provided the report. Fiedler could at least reasonably infer that this deputy had experience in observing individuals in various states of intoxication. Further adding to the reliability of the tip is the fact that the deputy was not anonymous, but a known individual. Indeed, Fiedler could reasonably assume that the deputy would know he could be held accountable if he provided a false tip. Fiedler had no reason to question the reliability of the tip that the driver of the dark Audi was intoxicated. Additionally, the off-duty deputy's tip appeared to be corroborated, at least to some extent, as Fiedler himself observed Mika's "abnormal" driving behavior of stopping at the stop sign, then rolling forward, then stopping again, and then proceeding forward at an unusually slow speed. The tip, coupled with the time of night (around 10:05 p.m.), *see State v. Lange*, 2009 WI 49, ¶32, 317 Wis. 2d 383, 766 N.W.2d 551 (concluding that the time of day is relevant for an OWI reasonable suspicion determination), and Fiedler's own observations of Mika's abnormal driving just minutes after the tip, provided Fiedler with reasonable suspicion to temporarily pull Mika over to investigate further.

¶22    Furthermore, as we observed in *State v. Coker*, No. 2017AP1555, unpublished slip op. ¶13 (WI App Feb. 14, 2018) (second and fifth alteration in original):

> In [*State v.* ]*Rutzinski*, our supreme court stated that "where the allegations in the tip suggest an imminent threat to the public safety or other exigency that warrants immediate police investigation," the Fourth Amendment
>
> > do[es] not require the police to idly stand by in hopes that their observations reveal suspicious behavior before the imminent threat comes to its fruition. Rather, it may be reasonable for an officer in such a situation to conclude that the potential for danger caused by a delay in immediate action justifies stopping the suspect without any further observation. Thus, exigency can in some circumstances supplement the reliability of an informant's tip in order to form the basis for an investigative stop.
>
> *Rutzinski*, [2001 WI 22, ¶26,] 241 Wis. 2d 729, [623 N.W.2d 516]. The court held that because "of the potential for imminent danger that drunk drivers present," an informant's allegations suggesting another motorist may be operating while intoxicated "supplement[ ] the reliability of the tip." *Id.*, ¶35.

Here, the tip, time of night, and observed questionable driving sufficiently justify the stop so that we need not rely upon the supplementation our supreme court discussed in *Rutzinski*. That said, such supplementation only further strengthens Fiedler's basis for stopping Mika. *See Coker*, No. 2017AP1555, ¶13.

¶23    Because the circuit court did not err in concluding there was a lawful basis for Fiedler to perform a traffic stop on Mika, we affirm.

> *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.