# COURT OF APPEALS
# DECISION
# DATED AND FILED

## January 18, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP794**

STATE OF WISCONSIN

Cir. Ct. No. **2019TR12117**

IN COURT OF APPEALS
DISTRICT II

---

COUNTY OF WINNEBAGO,

    PLAINTIFF-RESPONDENT,

V.

RYAN C. KALTENBACH,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Winnebago County: TERESA S. BASILIERE, Judge. *Affirmed.*

¶1 GUNDRUM, P.J.[1] Ryan C. Kaltenbach appeals from a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(g) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

(PAC). He contends the circuit court erred in denying his motion to suppress evidence. We disagree and affirm.

## *Background*

¶2     At the evidentiary hearing on Kaltenbach's suppression motion, the following relevant testimony was presented.

¶3     The Winnebago County Sheriff's Deputy who arrested Kaltenbach testified that shortly after midnight, between Friday, October 11 and Saturday, October 12, 2019, the deputy performed a traffic stop on Kaltenbach because one of his headlights was out. When the deputy made contact with Kaltenbach, he "immediately … smell[ed] a moderate odor of alcohol emanating from [Kaltenbach] as he spoke," causing the deputy to believe he "may be impaired." Upon questioning, Kaltenbach stated he was coming from "a haunted house," and he admitted "to consuming I believe he said two beers, and his last beer being around an hour ago." The deputy asked Kaltenbach to perform field sobriety tests, and Kaltenbach agreed. Those tests, including a preliminary breath test indicating a .10 blood alcohol concentration (BAC) level, resulted in Kaltenbach's arrest for "drunk driving" and ultimately his PAC conviction, based upon the .134 BAC result from a test of Kaltenbach's blood sample drawn less than an hour after the stop.

## *Discussion*

¶4     Kaltenbach contends the circuit court erred in concluding the deputy had reasonable suspicion to request that he perform field sobriety tests. While this is a close case, close cases still need to be decided one way or the other. For the following reasons, we affirm.

¶5      Reviewing a circuit court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the court's factual findings. *State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (2010).  Our review of whether the facts constitute reasonable suspicion, however, is de novo. *State v. Powers*, 2004 WI App 143, ¶6, 275 Wis. 2d 456, 685 N.W.2d 869.

¶6      In order for an investigatory stop to be justified by reasonable suspicion, the officer must possess specific and articulable facts that warrant a reasonable belief that criminal activity is afoot.  *State v. Young*, 2006 WI 98, ¶21, 294 Wis. 2d 1, 717 N.W.2d 729.  While a mere hunch is insufficient, "police officers are not required to rule out the possibility of innocent behavior before initiating [or extending] a brief stop." *Id.* (quoting *State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990)).  As our supreme court has explained:

> [S]uspicious conduct by its very nature is ambiguous, and the [principal] function of the investigative stop is to quickly resolve that ambiguity.  Therefore, if any reasonable inference of wrongful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, the officers have the right to temporarily detain the individual for the purpose of inquiry.

*Young*, 294 Wis. 2d 1, ¶21 (alterations in original) (quoting *Anderson*, 155 Wis. 2d at 84).  Indeed, "[i]t has been termed 'the essence of good police work' to briefly stop a suspicious individual 'in order to ... maintain the status quo momentarily while obtaining more information.'"  *State v. Williamson*, 58 Wis. 2d 514, 518, 206 N.W.2d 613 (1973) (citing *State v. Chambers*, 55 Wis. 2d 289, 294, 198 N.W.2d 377 (1972)).

¶7      "Reasonable suspicion is 'a low bar[.]'" *State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598.  In determining whether reasonable

suspicion exists, we must consider what a reasonable police officer would have reasonably suspected given his or her training and experience. *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996). Taking "everything observed by and known to the [officer]," *Nimmer*, 402 Wis. 2d 416, ¶26, we "determine whether the officer[] had 'a particularized and objective basis' to reasonably suspect [the defendant] of criminal activity," *id.*

¶8 As the State points out, the present case bears many similarities to that before us in *State v. Glover*, No. 2010AP1844-CR, unpublished slip op. (WI App Mar. 24, 2011). In *Glover*, an officer performed a traffic stop at approximately 1:19 a.m. on a vehicle traveling nine miles over the posted speed limit. When in contact with Glover, the driver, the officer observed a "slight odor of intoxicants emanating from the cab area of his vehicle." *Id.*, ¶2. There was also a passenger in the front seat. *Id.* Glover acknowledged to the officer that he had come from a bar and had been drinking; the officer did not recall if he asked Glover how many drinks he had consumed or what time he had consumed them. *Id.*, ¶3. The officer had Glover perform field sobriety tests which subsequently led to his arrest and conviction. *Id.*, ¶¶1, 6. On appeal, in deciding whether there was reasonable suspicion to extend the traffic stop and have the driver perform field sobriety tests, we concluded that the slight odor of intoxicants coming from the vehicle, Glover's admission that he had been drinking and had come from a bar, and "[t]he time of night, 1:19 a.m., around 'bar time,'" constituted reasonable suspicion that he had been operating his vehicle under the influence of alcohol. *Id.*, ¶18 (citation omitted).

¶9 Although Glover acknowledged consuming alcohol and coming from a bar, the odor was only "slight" and was coming from "the vehicle," in which there was a passenger from whom the odor presumably also could have

been emanating. *Glover*, No. 2010AP1844-CR, ¶2. In the case now before us, the deputy "immediately" noticed a "moderate" odor of intoxicants coming directly from Kaltenbach "as he spoke." Although "moderate" is not more specifically defined, the odor was strong enough that it led the deputy to believe Kaltenbach "may be impaired." Further, here, a reasonable deputy would have suspected Kaltenbach may have been lying about the amount and timing of the alcohol he had consumed because the deputy's "immediate" observation of a "moderate" odor of alcohol coming from Kaltenbach's breath would tend to indicate more significant alcohol consumption than just "two beers" with the last one being consumed approximately an hour before the traffic stop.

¶10 Additionally, in both *Glover* and this case, the stop was made late at night. Here, it was made around midnight on a Friday night into Saturday morning, a time of day and day of the week that lends to the suspicion that Kaltenbach may have been drinking intoxicants in an amount greater than one might consume at other times of day or on other days of the week because Saturday is generally a day when most people do not have to go in to work early in the morning. *See State v. Post*, 2007 WI 60, 301 Wis. 2d 1, ¶36, 733 N.W.2d 634 (time of night "does lend some further credence" to an officer's suspicion of intoxicated driving); *see also State v. Lange*, 2009 WI 49, ¶32, 317 Wis. 2d 383, 766 N.W.2d 551 (concluding the time of day is relevant for an operating while intoxicated probable cause (or reasonable suspicion) determination and "[i]t is a matter of common knowledge that people tend to drink during the weekend when they do not have to go to work the following morning").

¶11     Although, again, this is a close case, we conclude that the deputy here engaged in "good police work" by briefly[2] extending the stop for field sobriety tests "in order to ... maintain the status quo momentarily while obtaining more information." *See* **Williamson**, 58 Wis. 2d at 518 (citing **Chambers**, 55 Wis. 2d at 294).

*By the Court.*—Judgment affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[2] While Kaltenbach ultimately was required to perform the horizontal gaze nystagmus (HGN), walk-and-turn, one-leg stand, and preliminary breath tests before being arrested, there is no indication in the record that at the time he was asked to perform field sobriety tests it was a foregone conclusion he would have to be detained for that entire time.  If, for example, the deputy had observed zero "clues" of impairment on the first—HGN—test, the deputy well may have allowed Kaltenbach to get back in his vehicle and proceed on his way. Instead, however, the deputy observed six out of six clues on the HGN test, which obviously further increased suspicion of intoxicated driving and supported continued detention.  The deputy testified that he recalled from his training at "the academy," that "it's a 78% chance that he's above a .08" if six out of six clues are observed on the HGN test.