COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1834-CR**

Cir. Ct. No. 2020CF381

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

KEEFE JOSEPH NORDGREN,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Ozaukee County: PAUL V. MALLOY, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Keefe Joseph Nordgren appeals from a judgment of conviction for operating a motor vehicle while intoxicated (OWI), fourth offense. Nordgren asserts the circuit court erred when it denied his suppression motion.  We disagree and affirm the judgment.

## *Background*

¶2    A police officer for the City of Cedarburg performed a traffic stop upon Nordgren for speeding, which stop was extended so as to include an OWI investigation that led to Nordgren's arrest and conviction for OWI, fourth offense. Claiming the officer unlawfully extended the stop for the OWI investigation, Nordgren moved to suppress evidence flowing from that extension.  An evidentiary hearing was held on the motion, and the following relevant evidence was presented by the arresting officer, the only witness to testify at that hearing.

¶3    The officer stopped Nordgren for speeding at approximately 1:28 a.m. on November 2, 2020.  Upon making contact with Nordgren from the passenger side of the vehicle, the officer observed the slight odor of alcohol.  When the officer asked Nordgren where the alcohol smell was coming from, Nordgren reached in the back seat, lifted slightly a bag with cans and garbage in it, and then placed the bag back down.  The officer "didn't know what kind of cans they were," but they "[c]ould have been alcohol," and Nordgren indicated that "that was where the smell … might have been coming from."  When Nordgren lifted the bag, however, the officer "did not notice an increased level of smell from the bag."  The officer asked Nordgren if he had been drinking, and Nordgren denied doing so, but he did inform the officer that he had prior OWI convictions, with the last one being approximately four years prior.  The officer told Nordgren that he was going to "run" his driver's

license information and would be administering field sobriety tests to him upon returning from the officer's squad car.

¶4 Back at his squad car, the officer learned that Nordgren had three prior OWI convictions and his driver's license currently was revoked. Because of Nordgren's prior OWI convictions, the officer believed Nordgren likely had a .02 blood alcohol concentration (BAC) restriction.

¶5 The officer reapproached Nordgren's vehicle and asked him to step out. Nordgren refused to exit, made statements like "I can't," and "put his head down on the steering wheel." The officer "notice[d] a slight slur in his speech." Direct examination continued, with further incriminating evidence being presented that is not relevant to the issue on appeal.

¶6 Focusing on the fact Nordgren had no difficulties producing his driver's license during the officer's initial contact with him, on cross-examination, counsel for Nordgren asked the officer, "He showed no poor finger dexterity, he wasn't fumbling around with things. Correct?" The officer disagreed, because even though Nordgren had no difficulties with his drivers license, he did drop an unlit cigarette during his interaction with the officer. Regarding that cigarette, the officer also explained that "from my experience I also know that people often try to mask the odor coming from their [breath] by putting objects in their mouth such as gum or cigarettes."

¶7 On redirect examination, the officer testified that even if he had not noticed any signs of alcohol use upon his initial contact with Nordgren, he would have run Nordgren's driving record anyway upon returning to his squad car and would have learned that Nordgren's driver's license was revoked due to OWI

convictions, requiring the officer to arrest Nordgren for operating a motor vehicle after revocation of his license.

¶8      The circuit court determined the officer lawfully extended the traffic stop and denied Nordgren's suppression motion. Nordgren eventually pled and was sentenced. He now appeals his conviction, specifically challenging the denial of his suppression motion.

## *Discussion*

¶9      Nordgren does not dispute he was lawfully stopped for speeding. His only contention is that the officer's extension of the stop for the OWI investigation was unlawful because the officer did not have the necessary reasonable suspicion to believe Nordgren had violated an OWI-related law. We disagree.

¶10      Reviewing a circuit court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the court's factual findings. *State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (2010). Our review of whether the facts constitute reasonable suspicion, however, is de novo. *State v. Powers*, 2004 WI App 143, ¶6, 275 Wis. 2d 456, 685 N.W.2d 869.

¶11      In order for an investigatory stop to be justified by reasonable suspicion, an officer must possess specific and articulable facts warranting a reasonable belief that criminal activity is afoot. *State v. Young*, 2006 WI 98, ¶21, 294 Wis. 2d 1, 717 N.W.2d 729. While a mere hunch is insufficient, "police officers are not required to rule out the possibility of innocent behavior before initiating [or extending] a brief stop." *See id.* (quoting *State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990)). As our supreme court has explained:

4

> [S]uspicious conduct by its very nature is ambiguous, and the [principal] function of the investigative stop is to quickly resolve that ambiguity. Therefore, if any reasonable inference of wrongful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, the officers have the right to temporarily detain the individual for the purpose of inquiry.

*Young*, 294 Wis. 2d 1, ¶21 (alterations in original) (quoting *Anderson*, 155 Wis. 2d at 84). Indeed, "[i]t has been termed 'the essence of good police work' to briefly stop a suspicious individual 'in order to ... maintain the status quo momentarily while obtaining more information.'" *State v. Williamson*, 58 Wis. 2d 514, 518, 206 N.W.2d 613 (1973) (citing *State v. Chambers*, 55 Wis. 2d 289, 294, 198 N.W.2d 377 (1972)). Additionally,

> [i]f, during a valid traffic stop, the officer becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate and distinct from the acts that prompted the officer's intervention in the first place, the stop may be extended and a new investigation begun.

*State v. Betow*, 226 Wis. 2d 90, 94-95, 593 N.W.2d 499 (Ct. App. 1999).

¶12    "Reasonable suspicion is 'a low bar.'" *State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598 (citation omitted). In determining whether reasonable suspicion exists, we must consider what a reasonable police officer would have reasonably suspected given the investigating officer's training and experience. *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996). Considering "everything observed by and known to the [officer]," we "determine whether the officer[] had 'a particularized and objective basis' to reasonably suspect [the defendant] of criminal activity." *Nimmer*, 402 Wis. 2d 416, ¶26 (citations omitted).

¶13     The officer here had reasonable suspicion to extend the traffic stop for an OWI investigation.   Upon making first contact with Nordgren, the officer detected an odor of intoxicants.   While the odor may have been "slight," we also note that the officer was not standing at the driver's side window; rather, he detected this odor from the opposite side of the vehicle from where Nordgren was seated. Even though Nordgren indicated that the alcohol odor "might have been coming from" a bag of garbage, which included cans, the officer was not required to accept this "innocent" explanation, especially when he had detected no increase in the odor when Nordgren lifted the bag and placed it back down.

¶14     Additionally, the officer observed Nordgren to have challenged dexterity as he dropped his unlit cigarette.  Also related to the cigarette, the officer's experience informed him that individuals trying to mask a smell on their breath commonly chew gum or smoke a cigarette.  In light of the fact the officer detected the odor of intoxicants emanating from the vehicle and observed Nordgren to have challenged dexterity and be postured to engage in conduct that can mask smell on one's breath, the officer could easily and reasonably infer the alcohol odor inside the vehicle was coming from Nordgren himself.  Additionally, in light of the indicia of alcohol consumption observed with respect to Nordgren, the officer then also could reasonably infer Nordgren was exhibiting consciousness of guilt when he completely denied, and thus appeared to be attempting to hide, having consumed any alcohol.

¶15     We further observe that Nordgren was driving at approximately 1:28 a.m., so "around bar time," a time that raises greater suspicion of possible drunk driving, *see* ***State v. Post***, 2007 WI 60, ¶36, 301 Wis. 2d 1, 733 N.W.2d 634 (time of night, especially around "bar time" "does lend some further credence" to an officer's suspicion of a violation of OWI-related laws).  Nordgren also admitted

to the officer that he had multiple OWI convictions, which is yet another factor the officer could consider in deciding whether there was reasonable suspicion to extend the traffic stop for an OWI-related investigation. *See State v. Anderson*, 2019 WI 97, ¶51, 389 Wis. 2d 106, 935 N.W.2d 285; *State v. Lange*, 2009 WI 49, ¶33, 317 Wis. 2d 383, 766 N.W.2d 551. Then, while subsequently checking Nordgren's record at his squad car, the officer learned that Nordgren indeed had three OWI convictions and further learned that his license was revoked due to his OWIs, leading the officer to also believe Nordgren may well have had a .02 BAC restriction. In light of all of the foregoing, the officer had reasonable suspicion to believe Nordgren was operating his vehicle in violation of a .02 BAC restriction and thus lawfully extend the traffic stop for an OWI-related investigation.[1]

> *By the Court.*—Judgment affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).

---

[1] Additionally, as the officer intimated in his testimony, he also had probable cause to arrest Nordgren for operating with a revoked driver's license.